NUMBER 13-05-739-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ELIZABETH ROBERTSON LEE, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 36th District Court of San Patricio County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 A jury found appellant, Elizabeth Robertson Lee, guilty of murder and sentenced her
to sixteen years' imprisonment. (1) In three issues, appellant contends (1) the evidence is
factually insufficient to support her conviction; (2) the trial court erred in failing to timely
appoint appellate counsel; and (3) she received ineffective assistance of counsel. We
affirm. 

I. Background 


 It is undisputed that appellant fatally shot her live-in boyfriend, Dennis Mark Evans,
around 11:30 p.m. on the evening of May 9, 2004. Appellant contends, however, that she
was only trying to "scare" Evans and did not intend to kill him.

II. Factual Sufficiency


A. Standard of Review and Applicable Law


 We measure the factual sufficiency of the evidence in a jury trial by the elements
of the offense as defined by a hypothetically correct jury charge. (2) In determining the
factual sufficiency of the elements of the offense, we view all the evidence in a neutral light
to determine whether a jury was rationally justified in finding guilt beyond a reasonable
doubt. (3) We set aside a finding of guilt only if the evidence supporting the verdict is so
weak that the jury's verdict is clearly wrong and manifestly unjust or when the great weight
and preponderance of the evidence is contrary to the verdict. (4) A proper factual sufficiency
review must consider the most important evidence that the appellant claims undermines
the jury's verdict. (5)

 The jury, as the trier of fact, is the exclusive judge of the credibility of witnesses and
the weight to be afforded their testimony. (6) The jury is free to believe one version of the
facts and reject another. (7) It is also entitled to accept or reject all or any portion of a
witness's testimony. (8) We are authorized to disagree with the fact finder's determination
only when the record clearly indicates our intervention is necessary to stop the occurrence
of a manifest injustice. (9)

 In order to prove that appellant committed the offense of murder under section
19.02(b)(1) of the Texas Penal Code, the State had to prove that appellant intentionally or
knowingly caused the death of Dennis Mark Evans. (10) A person acts intentionally when it
is his conscious objective or desire to engage in the conduct or cause the result. (11) A
person acts knowingly when he is aware that his conduct is reasonably certain to cause
the result. (12) 

 Intent is a question of fact that is within the sole purview of the jury; the jury may rely
on its collective common sense and apply common knowledge and experience. (13) Intent
may be inferred from the circumstantial evidence surrounding the incident including the
acts, words, and conduct of the accused. (14) Moreover, the jury may infer the intent to kill
from the use of a deadly weapon unless it would be unreasonable to infer that death or
serious bodily injury could result from the use of the weapon. (15) The Texas Penal Code
defines a firearm as a deadly weapon. (16)

B. Analysis 


 Appellant contends the evidence is factually insufficient to prove that she
intentionally caused Evans's death. In support, appellant cites the following: (1) three of
the four gunshot wounds Evans suffered were to his buttocks area (one wound was to his
lower to mid-back area); (2) she testified that she did not intend to kill Evans; and (3) she
called 911 after she shot Evans.

 Appellant testified that the night of the shooting, she and Evans had been drinking
at a bar. Evans was so intoxicated that he fell asleep in the truck on the way home. 
Appellant went to sleep and was awakened by Evans beating on the door. According to
appellant, Evans was "ranting and raving, " threatening to "show [her] who was boss," and
threatening to "fuck [her] in the ass." Appellant testified Evans picked her up by the throat,
threw her against the dresser, and was choking her. She got her gun from a bedside
drawer to "scare" Evans. She testified Evans was sitting on the side of the bed when she
shot him and she thought he was going to get up and come after her. (17) After she fired the
shots, he did come after her, and she ran out of the house. After appellant realized she
had shot Evans, she called 911.

 David Dolinak, a forensic pathologist, performed an autopsy on Evans. He testified
that Evans died from "multiple gun shot wounds;" the wounds were consistent with Evans
lying on a bed, but were also consistent with "crouching" in a "defensive posture" to try to
avoid being shot. 

 Appellant also contends that "the most compelling and persuasive argument
involving [her] lack of intent and knowing behavior" came from Evans himself. The State
called Curt Beldin, Evans's supervisor, who testified that on one occasion, he heard
appellant threaten Evans that she would "kill [him] dead in [his] tracks." When Beldin
asked Evans if appellant was serious, Evans replied that appellant "threatens [him] with
that all the time." 

 We again note that the jury was free to accept or reject all or any portion of a
witness's testimony. (18) We may not substitute our own determination for that of the jury. (19)
Based on the record evidence, we conclude the jury could have inferred the requisite intent
essential to the commission of the offense of murder on the part of appellant from her acts,
words, and conduct. (20) Viewing the evidence under the proper standard, we conclude it is
factually sufficient to support appellant's conviction for murder. (21) We overrule appellant's
first issue.

III. Appointment of Appellate Counsel 


 In her second issue, appellant contends the trial court erred by failing to timely
appoint appellate counsel. Specifically, appellant contends she was sentenced on
November 18, 2005 and the trial court did not appoint appellate counsel until January 6,
2006. According to appellant, by failing to timely appoint appellate counsel, "the trial court
effectively eliminated" her ability to urge a motion for new trial. We disagree. 

 The record reflects that: (1) appellant was sentenced on November 18, 2005; (2)
trial counsel filed appellant's notice of appeal on November 21, 2005; (3) trial counsel filed
a motion to withdraw on December 2, 2005, but the motion was not granted until January
2, 2006; and (5) appellate counsel was appointed on January 6, 2006. Thus, appellant
was represented by counsel during the period in which she could have filed a motion for
new trial. Appellant failed to establish she was without counsel during the period in which
she could have filed a motion for new trial. (22) We overrule appellant's second issue. 

IV. Ineffective Assistance


 In her third issue, appellant contends she received ineffective assistance of counsel. 
Specifically, appellant complains her counsel was ineffective by (1) failing to follow up on
certain responses by a juror during voir dire, even though the juror stated he could be fair
and impartial; (2) giving only a brief opening statement; (3) commenting that certain parties
were not witnesses "for this part [of the trial]," which implied there would be a punishment
phase; (3) failing to call a witness who had performed a psychological evaluation on
appellant; and (4) failing to file a motion for new trial. 

A. Standard of Review and Applicable Law 


 Strickland v. Washington, (23) sets forth the standard of review for effectiveness of
counsel. (24) Strickland requires a two-part inquiry. (25) The defendant must first show that
counsel's performance was deficient, in that it fell below an objective standard of
reasonableness. (26) Second, the defendant must further prove there is a reasonable
probability that but for counsel's deficient performance, the result of the proceeding would
have been different. (27) A reasonable probability is a probability sufficient to undermine
confidence in the outcome. (28) 

 The determination regarding whether a defendant received effective assistance of
counsel must be made according to the facts of each case. (29) An appellate court looks to
the totality of the representation and the particular circumstances of the case in evaluating
counsel's effectiveness. (30) 

 The appellant bears the burden of proving by a preponderance of the evidence that
counsel was ineffective. (31) There is a strong presumption that counsel's conduct fell within
the wide range of reasonable professional assistance. (32) To defeat the presumption of
reasonable professional assistance, "any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness." (33) Generally, the record on direct appeal will be insufficient to show that
counsel's representation was so deficient as to meet the first part of the Strickland
standard. (34)

B. Analysis


 Here, appellant did not file a motion for new trial raising ineffective assistance that
would have allowed counsel to explain any trial strategy upon which his decisions may
have been based. Because there is no record to show trial counsel's reasons for acting or
failing to act in the manner challenged, appellant has failed to establish that her counsel's
assistance was ineffective. (35)

 Moreover, appellant asserts, without argument, explanation, or citation to authority,
that "but for counsel's unprofessional errors, the result of the proceeding would have been
different." Appellant has failed to explain why the purported failures by trial counsel would
have caused a different result. We conclude that appellant has not established the second
prong of Strickland because she has failed to show in reasonable probability that, but for
counsel's errors, the result of the proceeding would have been different. (36) We overrule
appellant's third issue.

V. Conclusion 


 We affirm the trial court's judgment. 



 


 LINDA REYNA YAÑEZ,

 Justice







Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and filed 

this the 30th day of August, 2007. 

 
1. See Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003). 
2. See Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet. ref'd). 
3. See Watson v. State, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006).
4. Id. at 415.
5. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
6. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986).
7. Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).
8. Id.; Ozuna, 199 S.W.3d at 605.
9. Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).
10. Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003).
11. Id. § 6.03(a). 
12. Id. § 6.03(b). 
13. Brown v. State, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). 
14. Guevara v. State, 152 S.W.3d 45, 50 ( Tex. Crim. App. 2004).
15. Mosley v. State, 983 S.W.2d 249, 254-55 (Tex. Crim. App. 1998) (citing Ross v. State, 861 S.W.2d
870, 873 (Tex. Crim. App. 1992)).
16. See Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon Supp. 2006).

17. Appellant's version of events changed several times. Initially, when the police arrived, she told them
"someone" had shot Evans, but she did not know who. She later admitted that she had shot Evans, but said
he had tried to strangle her and was "coming back at her" when she shot him. An investigating officer took
photographs of appellant to document her injuries, but found no marks indicating she had been choked. At
trial, appellant testified Evans was "sitting on the side of the bed" when she shot him, and she thought he was
going to get up and come after her. Officer Leo Martinez testified that he visited with appellant in jail after he
had reviewed the autopsy report on Evans. Martinez told appellant that the autopsy results (the projectile path
of the bullets) were inconsistent with appellant's written statement, in which she claimed Evans was "getting
up to come at [her] again." Upon being confronted with the autopsy results, appellant confirmed that Evans
was "laying down" when she shot him. 
18. Penagraph, 623 S.W.2d at 343; Ozuna, 199 S.W.3d at 605.
19. Ortiz v. State, 93 S.W.3d 79, 87-88 (Tex. Crim. App. 2002). 
20. See Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003); Guevara, 152 S.W.3d at 50, 
21. See Watson, 204 S.W.3d at 414-17.
22. See Oldham v. State, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998) (noting that appellant's filing
of pro se notice supports presumption she was adequately counseled unless record affirmatively displays
otherwise).
23. Strickland v. Washington, 466 U.S. 668, 687 (1984).
24. See Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).
25. Id. 
26. Id.
27. Id.
28. Id.
29. Id.
30. Id.
31. Id. at 813.
32. Id.
33. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).
34. Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).
35. See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
36. See Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812.