# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-05-00460-CR

**Cassandra Joyce Williams, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 9794, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Cassandra Joyce Williams of murder. *See* Tex. Penal Code Ann. § 19.02(b) (West 2003). The district court assessed punishment at fifty years' imprisonment. In five issues, Williams asserts that the jury charge was improper because it permitted a non-unanimous verdict and challenges the legal and factual sufficiency of the evidence showing that she acted with the requisite culpable mental state. We affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that Williams and the victim, Frank Bohannon, Jr., had been living together in an apartment in Marble Falls, Texas. On June 17, 2003, at around 9:30 p.m., police were called to the apartment, where a man later identified as Williams's father showed them to Bohannon's body, which was lying on the bathroom floor. The evidence established that Bohannon died as the result of a single stab wound to the chest, penetrating his heart.

A downstairs neighbor, Christine Rodriguez, testified that she heard Williams and Bohannon arguing in their apartment on the afternoon of June 17 and that after the argument, Williams walked downstairs and stated "to anyone who was listening" that she wanted a baseball bat in order to kill Bohannon. Rodriguez further testified that Williams then went back upstairs to her own apartment and began pounding on the door and that after Williams had re-entered the apartment, Rodriguez heard a "commotion" that sounded like Williams was trying to force open a door while Bohannon "was trying to get away" from Williams. "Shortly after that," according to Rodriguez, Williams walked out of her apartment and drove away in her car.

On cross-examination, however, Rodriguez testified that Bohannon was in fact "yelling" at Williams to come back upstairs after they first argued and that Bohannon "was getting mad" at Williams for being in Rodriguez's apartment. Defense counsel questioned Rodriguez further concerning a prior recorded statement that she had given to police close to the time of the investigation of Bohannon's death, which the State then admitted into evidence. After the recording was played for the jury, Rodriguez testified that she did recall telling police that Bohannon had thrown Williams out of the house and would not let her back in and that, after Williams had eventually returned to her apartment, Rodriguez "thought it sounded like [Bohannon] was trying to hurt [Williams]."

Rodriguez also testified on cross-examination that, while she had initially told the police that she had heard Williams pounding on the bedroom door, she had also told them that "we didn't really hear anything." She further admitted that her initial statement to investigators had been that Williams had said she wanted a baseball bat "to whip his ass," rather than to "kill" Bohannon.

When asked to address the apparent inconsistencies between her testimony on direct examination and the statements she had previously given to investigators, Rodriguez conceded that she had given "more than one completely different answer" on the tape as compared to her testimony on direct examination.

Williams's sister, Beverly Walker, testified that on the evening of June 17, Williams showed up at her house in nearby Granite Shoals and said "that she thinks that she stabbed [Bohannon], that she thinks he's dead." Williams also told Walker that she "couldn't have a man beating on her," but Walker acknowledged that Williams had no visible injuries that evening and that she had never seen Bohannon be violent before. She did state, however, that she had "often" seen Bohannon drink to the point of intoxication and that Bohannon was a "pretty regular" drinker.

Walker testified that she called their father to check on Bohannon, who went to Williams's apartment in Marble Falls and confirmed that Bohannon was dead. Walker then contacted the police, who arrived at her house and arrested Williams. After Williams was taken into custody, investigators obtained a warrant to search her vehicle and found a bloody knife "out in the open" in the passenger compartment. DNA analysis confirmed that the blood recovered from the knife matched that of Frank Bohannon. Several investigators testified that the knife, which had an eight-inch blade, is a weapon capable of causing death or serious bodily injury.

Williams's theory at trial was that Bohannon, an alcoholic who had physically abused Williams in the past, had attacked her while she was cornered in the bathroom and she stabbed him in self-defense.[1] Dr. Roberto Bayardo, the Chief Medical Examiner for Travis County who

---

[1] Williams did not testify, nor did the defense call any witnesses. Instead, during cross-examination of the State's witnesses, her counsel raised the possibility that Williams had been acting

3

performed Bohannon's autopsy, confirmed that Bohannon's blood-alcohol concentration was 0.31 percent at the time of death, nearly four times the legal limit for operating a motor vehicle in Texas; however, Dr. Bayardo also testified that he was "100 percent certain" that Bohannon had been lying down on his back when he was stabbed. Dr. Bayardo based his conclusion on the downward angle of the entry wound and the blood pattern on the victim's body and clothing, which he testified "shows that the blood was running towards his back" so that it dripped off of Bohannon's shoulder. Both Dr. Bayardo's testimony and the autopsy report established that Bohannon had no injuries to his hands or arms that would be consistent with defensive wounds.[2]

Dr. Bayardo also testified that Bohannon's degree of intoxication would likely have caused him to "pass out." This basis for concluding that Bohannon was therefore lying down when

in self-defense. Counsel attempted to elicit testimony from Walker that Williams's family had previously had to intervene on Williams's behalf when Bohannon had been drinking. The State's objections to further questioning concerning Bohannon's purported history of physical abuse were sustained on relevance grounds, and Williams does not raise a point of error on appeal with respect to the exclusion of Walker's testimony or any other evidence showing that Williams had been abused by Bohannon in the past.

Any challenge to the exclusion of Walker's testimony under article 38.36 of the code of criminal procedure, which provides that in all prosecutions for murder, the defendant "shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased," *see* Tex. Code Crim. Proc. Ann. art. 38.36(a) (West Supp. 2007), has been waived. *See* Tex. R. App. P. 33.1; *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (proponent of excluded evidence must have told judge why evidence was admissible and, to preserve error, must have sponsored evidence on specific ground that it was admissible under article 38.36). We note, however, that the charge contained a paragraph tracking the language of article 38.36, explaining that the jury may "consider all relevant facts and circumstances surrounding the killing, if any, and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the alleged offense, if any."

[2] Neither side questioned Dr. Bayardo as to whether Bohannon's significant blood-alcohol level might have accounted for his lack of defensive wounds by impairing his motor skills and slowing his reaction time.

4

he was stabbed was contradicted by defense counsel, who elicited testimony from Dr. Bayardo on cross-examination that a large man such as Bohannon with a history of alcoholism might have developed a tolerance to drinking significant quantities of alcohol and might not necessarily have passed out, even with a blood-alcohol level of 0.31.

Sergeant Garth Davis, a Texas Ranger who had analyzed the crime scene, also testified regarding the likelihood that Bohannon had been lying on the ground when he was stabbed. He testified that, as illustrated by the autopsy photographs, the pattern of blood flowing from the victim's left shoulder to his back and the absence of blood dripping down the chest of the victim indicated that Bohannon had been lying down when he was stabbed. He further testified, as an expert in blood-stain analysis, that the crime scene showed no evidence that the victim had been moving, that he had fallen against any surfaces when he was stabbed, or that he had been actively resisting or fighting off an attacker.[3] Sergeant Davis characterized the amount of blood at the crime scene as "very limited." He noted that the majority of the blood evidence found at the scene was discovered on the victim's body and pooled on the floor beneath the victim.[4] He explained that the

---

[3] According to Sergeant Davis,

When someone is assaulted this way, it is not like what you see on television. People don't stop and immediately crumble when they are shot, stabbed, or assaulted unless something happens to the central nervous system, unless they are shot in the head or something severs their spinal cord. The blood, the heart, even if the heart is impacted it keeps beating for some seconds and the person keeps moving. So I noticed that we did not have any blood that showed this body moving side to side, forward or backward.

[4] The medical examiner's report, which was admitted into evidence, indicates that the victim had "massive internal bleeding" and that much of the victim's blood remained within his body, filling the pericardial sac and lung cavity. The cause of death was a stab wound to the chest, "through and through the base of the heart," indicating that the stabbing instrument perforated the heart and penetrated through to the other side of the organ, as Dr. Bayardo explained during direct

5

small amount of blood on the bathroom walls and bathtub was consistent with "castoff," or blood that drips off of or is thrown from a blood source such as a knife or a person's hand. Sergeant Davis was unable, however, to conduct a blood-spatter analysis to determine the height at which Bohannon was stabbed because the crime-scene photographs he was given to analyze did not sufficiently document this evidence. But he did testify that the small amount and specific location of the castoff blood, which was all located "near the ground," no higher than three or four feet from the floor, did not in his opinion support any of the scenarios suggested by the defense wherein the victim had been standing and then "slid down the inside of a door jamb" or had fallen against the wall or bathtub after being stabbed while standing upright. Rather, because there was "very little" castoff, Sergeant Davis believed that the drops of blood found on the walls and bathtub fell from "a smaller object with little blood on it," disagreeing with defense counsel's suggestion that the blood came from the victim himself as he moved around the bathroom, leaving blood stains on the walls and bathtub.

The jury also heard evidence that Williams complained of several injuries when she was taken into custody. Officer Jackie Semmler, the administrative sergeant at the Burnet county jail, testified that Williams reported having an injured right hand and alleged that she was experiencing soreness to her forehead, nose, neck, and knee area. Semmler documented Williams's complaints the night she was processed and took several photographs of Williams, which were admitted into evidence and showed no apparent injuries other than her swollen right hand.

Early the next morning, police took Williams to the Seton Highland Lakes emergency room, where she was treated by Dr. Robert McClimans. Dr. McClimans testified that Williams told

---

examination. The estimated depth of penetration was four to five inches, and the path of the wound was "from head towards toes, from front toward back at a 45-degree angle."

him that she had been in a fight and that she complained of an injury to the outside of her right hand. He observed swelling and a contusion on the outside of her right hand but found no other injuries and nothing to indicate that Williams "had been the victim of a beating." He also stated that the injury to her hand was just as likely to have resulted from striking a surface, such as a door, as from being struck (i.e., a defensive wound) and that the specific injury to Williams's hand was not "a routine injury" that is typically seen in a situation involving family violence.[5]

The court's charge to the jury explained in the application paragraph that it should find Williams guilty of murder "if it found beyond a reasonable doubt that (1) Williams did intentionally or knowingly cause the death of Frank Bohannon, Jr., by stabbing him in the chest with a knife or (2) Williams did intend to cause serious bodily injury to Frank Bohannon, Jr., and with said intent did commit an act clearly dangerous to human life, to wit, stabbing him with a knife."

The jury found Williams guilty of murdering Bohannon, and the district court assessed punishment of fifty years' imprisonment. This appeal followed.

## DISCUSSION

In her first issue, Williams argues that the application paragraph was faulty because it permitted the jury to reach less than a unanimous verdict. In her remaining issues, Williams challenges the legal and factual sufficiency of the evidence that Williams either intended to kill

---

[5] Further evidence established that on June 24, Williams received a follow-up examination by Dr. Brian Kingston, who testified that he observed no bruising anywhere on Williams, no other evidence of injuries to Williams other than "mild swelling of the left knee joint," and nothing to indicate that Williams had been the victim of any force or trauma.

Bohannon or intended to cause serious bodily injury and committed an act clearly dangerous to human life.

*Standards of review*

In reviewing a jury charge, we must first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error is found, reversal is required upon a showing of "some harm" because Williams properly preserved error on this issue by making a timely objection to the jury charge. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). "In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171.

In reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We look at events occurring before, during, and after the commission of the offense and may "rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* The jury is the exclusive judge of the credibility of witnesses and the weight to be accorded their testimony. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Reconciliation of any

8

conflicts in the evidence is within the exclusive province of the jury. *Hooper*, 214 S.W.3d at 13. The jury may draw reasonable inferences and make reasonable deductions from the evidence. *Id.*

Evidence is factually insufficient when it is so weak that the jury's verdict seems clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Sells v. State*, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003). We also consider whether the jury's verdict, though legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007). A factual sufficiency review requires the reviewing court to consider all of the evidence while giving "due deference" to the jury's determinations. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). We may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

*Jury Charge*

Williams contends that the district court's jury charge was faulty because it allowed the jury to convict with less than a unanimous verdict, finding her guilty under either of two alternative theories alleging two separate criminal acts. *See* Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2007). Under Williams's interpretation of the jury charge, the State's first theory required a mental state of intentional or knowing along with "an *actus reus* of causing death," while the second theory required a specific intent to cause serious bodily injury "and an additional *actus reus* element of committing an act clearly dangerous to human life that caused the death of an individual." Williams asserts that this was error because of the rule announced by the court of criminal appeals in *Ngo* that the jury "must be unanimous in deciding which one (or more) of the . . . offenses it found appellant committed." *See* 175 S.W.3d at 749.

9

When assessing a jury-unanimity challenge, we examine the plain language of the relevant statute. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006). The purpose of this inquiry is to determine whether the legislature has created a single offense with multiple or alternate methods of commission. *Id.* Jury unanimity is required with respect to all essential elements of the offense at issue; however, the jury need not unanimously agree on the specific method of committing a single offense. *Id.*

Section 19.02 of the penal code provides, in pertinent part, that a person commits the offense of murder if she (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1), (2). The jury charge therefore tracked the statutory language, allowing the jury to convict if it determined that Williams either intentionally or knowingly caused Bohannon's death or that she intended to cause Bohannon serious bodily injury and, acting with that intent, committed an act clearly dangerous to human life that caused Bohannon's death.

Contrary to Williams's assertion, the court of criminal appeals has determined that the provisions of section 19.02(b) set forth alternative methods or means of committing the same offense. *See Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (op. on reh'g). Williams is therefore incorrect that the jury charge contained two separate criminal acts or alleged two separate offenses. Her specific complaint, that subsections (1) and (2) of the murder statute constitute two distinct acts or offenses and thereby allow for a less than unanimous conviction, has been soundly rejected by our sister courts. *See, e.g.*, *Garcia v. State*, No. 04-02-00351-CR, 2007 Tex. App. LEXIS 8051, at *40-41 (Tex. App.—San Antonio Oct. 10, 2007, no pet.); *Ortiz v. State*,

10

No. 05-05-01527-CR, 2007 Tex. App. LEXIS 1282, at *14-15 (Tex. App.—Dallas Feb. 21, 2007, pet. ref'd) (not designated for publication); *Johnson v. State*, 233 S.W.3d 109, 113 (Tex. Crim. App.—Houston [14th Dist.] 2007, no pet.) (citing *Yost v. State*, 222 S.W.3d 865, 877-78 (Tex. App.—Houston [14th Dist.] 2007, no pet.)).[6]

We likewise conclude that the jury charge in this case did not permit the jury to reach a less than unanimous verdict. The fact that the jury could have decided between two possible means of committing the offense—either that Williams intentionally or knowingly caused Bohannon's death by stabbing him in the chest with a knife, or that she intended to cause Bohannon serious bodily injury when she stabbed him in the chest with a knife, an act "clearly dangerous to human life"—does not present error. We overrule her first issue.

*Legal Sufficiency*

In her second and fourth issues, Williams challenges the legal sufficiency of the evidence that she intentionally or knowingly caused the death of Bohannon or that she intended to cause him serious bodily injury.[7] She argues that the evidence shows that she "picked up a small

---

[6] Williams cites no authority, nor were we able to find any, supporting her claim that the murder statute contains alternative acts or offenses, as opposed to setting forth different methods of committing the same offense. As the other courts who have addressed this contention have aptly explained, a jury charge proposing alternative methods of committing murder under sections 19.02(b)(1) and 19.02(b)(2) is clearly distinguishable from the situation in *Ngo*. *See Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005). In *Ngo*, the State sought one conviction for credit-card abuse with evidence that, at different times, the defendant committed three different acts that the applicable statute defined as separate criminal offenses, not as separate means of committing a single criminal offense. *See id.* at 743. By contrast, the State in this case sought one murder conviction with evidence that on June 17, 2003, Williams committed a single act—stabbing Bohannon with a knife—that constitutes two separate means of committing the single offense of murder.

[7] Williams does not challenge the sufficiency of the evidence proving that she is the person who stabbed Bohannon, a fact that she conceded at trial, but instead argues only that the State did not prove that she acted with the requisite culpable mental state.

11

knife" and stabbed Bohannon only one time, that she made no attempt to cover up her act, and that she left the knife in plain view in her car. Williams maintains that there is no direct evidence showing that she intended to kill Bohannon; rather, she argues that the testimony at trial clearly indicates that she "was attempting to stop the continued abuse that day" by Bohannon.[8]

An accused's intent can be inferred from his acts, words, and conduct. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982); *Henderson v. State*, 825 S.W.2d 746, 749 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). In deliberating the issue of intent, the jury is entitled to consider events that occurred before, during, and after the alleged offense. *Henderson*, 825 S.W.2d at 749. Furthermore, the jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. App. 1996); *Ross v. State*, 861 S.W.2d 870, 873 (Tex. Crim. App. 1992).

---

[8] By claiming legal insufficiency in this manner, Williams is essentially arguing that the evidence of justification to kill Bohannon was so compelling that the issue of her guilt should never have been presented to a jury. *See Clewis v. State*, 922 S.W.2d 126, 132 (Tex. Crim. App. 1996) (claim of legal sufficiency is, in effect, argument that case should never have been presented to jury). Williams does not complain on appeal, however, that the district court erred in failing to instruct the jury on self-defense, *see, e.g.*, *Ex parte Nailor*, 149 S.W.3d 125, 132 (Tex. Crim. App. 2004) (defendant is entitled to instruction on self-defense if issue is raised by evidence), nor was Williams entitled to the instruction: the law is clear that a defendant is not entitled to a self-defense instruction if he does not first admit to the actions *and the mental state* that comprise the offense. *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999). Therefore, we consider the evidence concerning allegations of prior physical abuse by Bohannon and Williams's claim of self-defense only as these issues relate to our review of the sufficiency of the evidence. We further note that while Williams implies that a reasonable person in her position might have believed that deadly force was necessary to protect herself from another's use or attempted use of unlawful force, *see* Tex. Penal Code Ann. § 9.31 (West Supp. 2007), this circumstance would not negate the evidence of her intent to kill or cause serious bodily injury to Bohannon, as Williams apparently argues on appeal, but would provide a justification for her conduct.

Viewed in the light most favorable to the verdict, the evidence shows that Williams argued with Bohannon on the afternoon of the murder, threatened Bohannon with bodily harm, left the scene with the murder weapon, failed to call the police or obtain emergency medical services for Bohannon at any point, and told her sister that she thought she had stabbed Bohannon. Several experts testified that the knife used to stab Bohannon is a deadly weapon capable of causing serious bodily injury and that it was used in a deadly manner; the evidence established that the knife was driven four to five inches into Bohannon's chest, penetrating his heart "through and through" at a downward, 45-degree angle. This testimony concerning the manner in which the knife was used supports a reasonable inference that death or serious bodily injury was a likely result of Williams's conduct, sufficient to support the jury's verdict that Williams acted with the requisite intent. While the inference was countered by the claim of self-defense, the State presented additional evidence indicating that there were no signs of a struggle in the bathroom or that Bohannon had been trying to defend himself; offered testimony from which the jury could reasonably have concluded that Williams had not been physically abused or beaten; and proposed a theory that Bohannon was in fact lying on the ground when he was stabbed.

Nevertheless, Williams urges that the evidence is legally insufficient to support her conviction because Dr. Bayardo's assertion of "100 percent accuracy" that Bohannon had been lying down destroyed his credibility, particularly in light of evidence of blood splattered around the bathroom. We acknowledge that there were some conflicts in the evidence—such as Dr. Bayardo's testimony suggesting that Bohannon had been "passed out" on the bathroom floor after Christine Rodriguez testified that Williams and Bohannon had been arguing and that there had been a "commotion" upstairs that sounded as though someone was trying to force open a door—but it is

13

within the exclusive province of the jury to reconcile these conflicts in the evidence. *See Jones*, 944 S.W.2d at 647. In our review of legal sufficiency, we must resolve any inconsistencies in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Concerning the allegations of physical abuse, the jury heard testimony from the two doctors who treated Williams in the days following the incident that she had no injuries indicating that she had been "beaten" or that she had been defending herself.[9] Although there was evidence that Rodriguez had initially told police that "it sounded like [Bohannon] was trying to hurt" Williams, that Bohannon was angry with Williams, and that he yelled at her to come upstairs, as well as Walker's testimony that Williams had told Bohannon that she "couldn't have a man beating on her,"[10] there was no testimony or evidence that Bohannon had actually been assaulting Williams when she stabbed him.

In a legal-sufficiency review, we look not to whether the State presented evidence refuting a defendant's self-defense claim; rather, we determine whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt, and if so, would have implicitly found against appellant on the self-defense issue beyond a reasonable doubt. *See* Tex. Penal Code Ann. § 2.03(d) (West 2003); *see also Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App.1991). Because the jury is the exclusive judge of the credibility of witnesses and the weight to be accorded

---

[9] The jury could have reasonably concluded that the bruising to Williams's hand was the result of her pounding on the door after she argued with Bohannon, as the State had suggested at trial.

[10] Viewing this testimony in the light most favorable to the verdict, the jury could rationally have found Walker's testimony not to be credible because of her potential bias.

14

their testimony, *see Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), the jury was free to disbelieve the theory that Williams had been defending herself. When performing a legal-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). In this case, a rational jury could have found that Williams intentionally or knowingly stabbed Bohannon, in spite of Walker's and Rodriguez's statements raising the possibility that Williams might have been justified in her conduct because she was acting in self-defense.

We therefore conclude that the evidence was legally sufficient for the jury to have found that Williams intended to kill Bohannon or to cause him serious bodily injury and overrule both points of error.

*Factual Sufficiency*

In her third and fifth issues, Williams asserts that the evidence was factually insufficient to prove that she acted with the requisite intent to kill or to cause serious bodily harm. Williams maintains that the verdict is against the great weight and preponderance of the evidence because the record establishes that (1) there was only one stab wound; (2) Williams had been physically abused; and (3) Bohannon was six feet tall and muscular, ensuring that "this should not have been an act clearly dangerous to human life, just an effort to stop his continuing attack" on Williams. We disagree.

As discussed above, the State presented evidence that Williams and Bohannon argued on the day of the murder, that Williams told her neighbor that she was going to "whip [Bohannon's] ass," that there were no signs of a struggle in the bathroom where Bohannon's body was found, that Williams did not call 911 after she stabbed Bohannon, and that Williams instead left Bohannon alone

15

in the apartment and drove to her sister's house, taking with her the knife she had used to stab Bohannon. The evidence that Williams stabbed Bohannon only once and that Bohannon was a large man does not preponderate against the State's evidence showing that she intended the result of her conduct. We reject the implication that the State was required to prove that Williams stabbed Bohannon repeatedly in order to show that she intended to kill him or cause him serious bodily injury; instead, we conclude that the jury could reasonably have found, based on the evidence regarding the depth and location of the fatal wound, that the injury could have killed or caused serious bodily injury to any person, regardless of his height or muscularity.

Nor are we persuaded that Williams's claim of self-defense makes the verdict seem clearly wrong and manifestly unjust. The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject any defensive theories raised by the defendant. *McClesky v. State*, 224 S.W.3d 405, 409 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). In this case, as we have discussed above, Williams's apparent theory at trial was that she had acted in self-defense, eliciting testimony from her sister, Beverly Walker, and her neighbor, Christine Rodriguez, suggesting that Bohannon had been abusive. By its verdict, the jury clearly rejected the contention that Williams was justified in stabbing Bohannon while determining beyond a reasonable doubt that Williams had in fact intended to kill or cause serious bodily injury to Bohannon. *See Saxton*, 804 S.W.2d at 913.

When a defendant challenges the factual sufficiency of the rejection of a defense, the reviewing court applies the ordinary factual-sufficiency standard, reviewing all the evidence in a neutral light and asking whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and

16

preponderance of the evidence. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). While Williams raised the possibility that she had acted in self-defense in order to prevent the continued abuse by Bohannon, the State related a different version of events, arguing that Williams had been angry with Bohannon, that she had threatened him, and that while he was lying on the ground, she stabbed him. As noted above, the jury, as the trier of fact, is the sole judge of the credibility of the witnesses and may believe or disbelieve all or part of any witness' testimony. *See Saxton*, 804 S.W.2d at 913. Based on the evidence presented, the jury found William's self-defense theory unpersuasive in light of the evidence put on by the State.

Therefore, reviewing all the evidence in a neutral light, we cannot say that the proof of Williams's guilt is against the great weight and preponderance of the evidence showing that Williams intentionally or knowingly killed or caused serious bodily injury to Bohannon. We overrule Williams's remaining points of error.

## CONCLUSION

Because the jury charge did not permit the jury to reach a less than unanimous verdict and because the evidence was legally and factually sufficient to show that Williams acted with the requisite culpable mental state, we affirm the judgment of conviction.

_____

Diane Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: March 21, 2008

Do Not Publish

17