James Clarence ROSS, Appellant,

v.

The STATE of Texas, Appellee.

No. 69206.

Court of Criminal Appeals of Texas, En Banc.

Dec. 9, 1992.

Rehearing Granted Jan. 20, 1993.

Opinion Reconsidering Decision in Part on Rehearing Jan. 20, 1993.

Douglas M. O'Brien (court appointed on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Winston E. Cochran, Jr. and Timothy G. Taft, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Matthew W. Paul, Asst. State's Atty., Austin, for State.

## OPINION

BENAVIDES, Judge.

Appellant was convicted on August 24, 1983 of capital murder for intentionally killing Ronald Ted Martin while in the course of committing a robbery. *See*, V.T.C.A., Penal Code, § 19.03(a)(2). After the jury answered affirmatively to both special issues submitted under Article 37.071, V.A.C.C.P. the trial court imposed the penalty of death.

Appellant presents eleven points of error for our review. Because we will set aside the conviction for failure of the trial judge to

correctly charge the jury, we will review only three points of error.

Appellant's points of error are based on the following confession by appellant which was introduced by the State:

On Friday September 24, 1982 at approximately 8:30 p/m Ronald Nix who is a friend of mine came and picked me up at the B & B store which is located on Safebuy. Ronald who was driving his blue toyota. We left the B & B store and went to northwood manor and picked Robert Lewis up at his house. Then we went to a friend of mines house named Clifford who lives near Homestead and Highway 59. We stayed there smoking pot and drinking until about 10 p.m. We went down off Jensen and rode around and we started to take Robert back home, Nix was driving, and Robert was in the front and I was in the back. We got off the freeway somewhere around Littleyork and Robert said let's go make some money. I told him I did not have a gun and he said he had one. Robert pulled a silver derringer out of his back pocket and handed it to the backseat to me and I looked at it and I told him "What are you going to do with this thang it only shoots two times?" I then passed the gun back to Robert in the front seat.

We were then driving on the feeder street and Robert told Nix to turn in by a topless club and stop. Robert got out of the car and walked up to a white man and Ronald ran up and hit the white guy I don't know with what. As I got up to the white mans car which was a tan colored thunderbird Robert and Ronald put the white man in the back seat of his car. The white man was lying face down in the back seat and Robert was driving, and I got into the front seat on the passengers side and Ronald got into his toyota and followed us.

We then went by Roberts house and left Nix's toyota and Nix got in the front seat with me and Robert and I was riding in the middle of the front seat. The derringer was lying in the seat and when I scooted over I picked it up and I asked him how it worked and Robert told me I had to cock it first. While we were driving around Ronald was going through the mans pockets. Robert drove to a dark road in the back of northwood manor and stopped. Robert got out, then Nix got out and then I got out of the car. Robert grabbed the man on the left shoulder and I grabbed the man by the right shoulder and then we walked the man about a 100 feet and Nix was following behind us and I had the gun in my right hand pointing up towards the mans head. Robert said this is far enough and I told him no "Lets take him into the weeds," and then I shoved him while the gun was still in my right hand up near the mans shoulder pointing towards his head. When I shoved the man the gun went off and struck the man in the head. When the gun went off I told Robert to go ahead and put him down and then he touched the back of his head and then he fell to the ground. I told Robert I just shot him in the head lets go. We then left. We went to Roberts house and I asked him how much money did the man have I don't remember how much he had.

Robert said lets go make some more money and I said lets wait until tomorrow. We went a drank a little while and I told Robert to take me back to Nix's car because I was getting ready to go because it was getting late. Robert dropped me and Nix off and we went back to the house.

We note that in addition to the confession, the State introduced testimony from other sources. One neighbor testified that he heard two shotgun shots and a pistol shot fired in rapid succession. Another neighbor also testified that he heard three shots fired in rapid succession. Near where the victim's body was found, a deputy sheriff located two spent shotgun shells on the roadway. Other police officers revealed that appellant's car was found at an abandoned house, approximately two blocks from the murder scene. The State also introduced medical testimony. The medical examiner testified that the victim died from a contact wound behind the right ear. He testified that the barrel of the gun was two to three millimeters from the skin, and the bullet entered the right side of the head, traveled through the brain tissue, and lodged into the upper left portion of the head.

## I.

In point of error number one, appellant directs our attention to the following statement in his confession: "[w]hen I shoved the man the gun went off and struck the man in the head." Appellant argues that because of this statement, the evidence is insufficient to prove he intentionally caused the death of Martin as required by V.T.C.A. Penal Code, § 19.03(a)(2). While this isolated statement may raise an inference that the shooting was accidental, we find the evidence adduced at trial is sufficient to find appellant intentionally caused the death of the victim.

The standard of review to determine the sufficiency of the evidence to show an intentional killing is the same under murder and capital murder. *Thompson v. State,* 691 S.W.2d 627, 630 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. *Godsey v. State,* 719 S.W.2d 578, 581–82 (Tex.Crim.App.1986). And in determining the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Dunn v. State,* 819 S.W.2d 510, 513 (Tex.Crim.App.1991); *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Applying the *Jackson* criteria to the facts of this case, we find a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally caused the death of the deceased. V.T.C.A. Penal Code, § 19.03(a)(2). While the isolated statement by appellant in his confession may lend support to his argument that the shooting was accidental, that was not the only evidence the jury reviewed. A rational jury could conclude from appellant's request for information on how to fire the derringer after the victim had been abducted; the placement of the derringer underneath the ear of the victim with the gun pointed in an upwards direction towards his brain; the manner in which the robbers walked the victim out into a deserted field; the lack of shock or remorse for killing the victim; and the statement of appellant that "[he] just shot him in the head lets go" as an indication that appellant intentionally caused the death of the victim.

Appellant further argues that because the state introduced the purported exculpatory statement by appellant, the state must disprove that statement. *See Palafox. v. State,* 608 S.W.2d 177, 181 (Tex.Crim.App.1980); *County v. State,* 812 S.W.2d 303, 313 (Tex. Crim.App.1989).[1] In *Palafox,* the defendant, charged with capital murder, admitted to killing the victim and burglarizing his home. The confession illustrated that he took the items from the house to make the murder appear to look like a burglary. The confession admitted murder but exculpated him of the capital offense charged: murder in the course of robbery. Because the statements were exculpatory of the offense charged the State was required to disprove those statements in the confession. *Id.,* 608 S.W.2d at 181.

The rule of law articulated in *Palafox* is inapplicable to the facts of this case. The statement is not exculpatory. Here, the State was required to prove beyond a reasonable doubt that appellant intentionally caused the death of Martin. Appellant argues on appeal that the statement contained in the confession raises an inference that the killing was accidental. While the isolated statement in and of itself may be insufficient to show appellant intentionally caused the death of the victim, it does not follow that the State's burden is somehow made greater because the State admitted the confession into evidence. *Gribble v. State,* 808 S.W.2d 65, 69 (Tex.Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991). As this court stated, "[r]equiring the State to disprove beyond a reasonable doubt that appellant killed the deceased unintentionally is neither qualitatively nor quantita-

---

1. For cases tried after September 1, 1986, the "Palafox" or "voucher" rule no longer exists. *See Ibanez v. State,* 749 S.W.2d 804, 807 (Tex. Crim.App.1986).

tively different than requiring it to prove beyond a reasonable doubt that he killed [him] intentionally." *Gribble*, 808 S.W.2d at 69.

Because the evidence is sufficient to find appellant intentionally caused the death of Martin and because there is no exculpatory statement in the confession which must be disproved, appellant's first point of error is overruled. We note in addition that any inference of accident that could be made from the alleged exculpatory statement was clearly outweighed by the evidence outlined above.

## II.

■ In point of error number four, appellant asserts that the evidence is insufficient to support the jury's finding that he deliberately killed Martin, as required in special issue number one. Article 37.071, V.A.C.C.P. "A jury must find 'a moment of deliberation and the determination on the part of the actor to kill' before it is justified in answering 'yes' to special issue number one." *Kinnamon v. State*, 791 S.W.2d 84, 95–96 (Tex. Crim.App.1990). This Court will look at the totality of the circumstances in a case-by-case analysis to determine whether the murder was "deliberate." *Kinnamon*, supra; *Cannon v. State*, 691 S.W.2d 664, 677 (Tex. Crim.App.), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1985). In determining the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the verdict. *Dunn v. State*, 819 S.W.2d 510, 513 (Tex.Crim.App.1991); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The evidence from the trial is sufficient for a jury to find that the murder was "deliberate" as required for the return of an affirmative answer to special issue number one. The evidence at trial reveals that appellant and his accomplices robbed Martin, and drove him to his execution site. Once the three accomplices had reached a dark and deserted road, the three accomplices and Martin exited the car. Appellant and Robert walked Martin out to the field. Appellant pointed a cocked derringer at the victim's head and shot the victim. Appellant also confessed, "I told Robert I just shot him in the head lets go." Evidence from the medical examiner illustrated that the victim was shot at point blank range underneath the right ear. There was also testimony of consecutive shotgun shots and a pistol shot, in what could have been an attempt to disguise the sound of the execution. Additionally, the evidence illustrated that on a previous aggravated robbery, appellant threatened the victim, "Red Nigger, if you raise your head, we're going to blow your brains." This evidence taken as a whole was sufficient for a rational jury to find that the murder was "deliberate." Appellant's fourth point of error is overruled.

## III.

Appellant claims that the trial court erred in failing to charge the jury on the lesser included offense of involuntary manslaughter in point of error number three.

This Court has enunciated a two part test to determine whether a charge on a lesser included offense is required. *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App. 1975); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App.1985). The first prong of the test requires that the offense requested to be charged is a lesser included offense of the offense charged. *Royster*, 622 S.W.2d at 446. Involuntary manslaughter is a lesser included offense of murder, and the first prong of the *Royster* test is easily met. *Brooks v. State*, 548 S.W.2d 680 (Tex.Crim.App.1977)

■ The second inquiry, is whether there is some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Royster*, supra; *Aguilar*, supra. The credibility of the evidence and whether it conflicts with other evidence must not be considered in deciding whether the charge on the lesser offense should be given. *Saunders v. State*, 840 S.W.2d 390 (Tex.Crim. App.1992) (rehearing denied Nov. 4, 1992); *Lugo v. State*, 667 S.W.2d 144 (Tex.Crim. App.1984). We must determine if there is some evidence at trial which indicates appellant, if guilty, was guilty only of involuntary manslaughter.

A person commits involuntary manslaughter if that person recklessly causes the death of an individual. V.T.C.A. Penal Code, § 19.-05. "A person acts recklessly . . . when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." V.T.C.A. Penal Code, § 6.03(c). The essential difference between murder and involuntary manslaughter is the requisite *mens rea*—the first being intentional and the latter being recklessness.

Appellant's confession and expert testimony at trial raised the issue of recklessness. Appellant confessed:

Robert said this is far enough and I told him no 'Lets take him into the weeds,' and then I shoved him while the gun was still in my right hand up near the mans shoulder pointing towards his head. When I shoved the man the gun went off and struck the man in the head.

*See, Gibbs v. State,* 819 S.W.2d 821 (Tex. Crim.App.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1991). Appellant was also aware of the necessity to first cock the hammer before the derringer could be fired. Surely it is at least reckless to knowingly hold a loaded, cocked derringer at someone's head. *See also, Montoya v. State,* 744 S.W.2d 15 (Tex.Crim.App.1987); *Lugo v. State,* 667 S.W.2d 144 (Tex.Crim.App.1984). In addition to the confession, the State and Appellant presented conflicting testimony as to the different brands of derringers and their respective safety devices. Appellant's expert testified that "[it] would not take much pressure on the trigger to release the hammer to fire the cartridge. That's why you would not normally carry a weapon cocked. It takes very little at that point, just a slight squeeze, depending on the weapon. There is a wide variance in the pressure to release the hammer." The confession statement "[w]hen I shoved the man and the gun went off . . ." and the testimony of appellant's expert when taken together raise an inference that the shooting of the victim was a reckless act. This case is controlled by *Saunders* where a majority of this Court determined that, "regardless of the strength or weakness of the evidence, if any evidence raises the issue that the defendant was guilty of the lesser offense, then the charge must be given." [2] 840 S.W.2d at 391; *see, Ojeda v. State,* 712 S.W.2d 742 (Tex.Crim.App.1986); *Bell v. State,* 693 S.W.2d 434 (Tex.Crim.App. 1985). Where the evidence given at trial is subject to two reasonable inferences, the jury should be instructed on both inferences. *Saunders,* 840 S.W.2d at 392; *Thomas v. State,* 699 S.W.2d 845, 851 (Tex.Crim.App. 1985). The confession of the defendant is subject to an inference that he intentionally or recklessly killed Martin during the course of committing the robbery of Martin. Accordingly appellant, was entitled to the requested charge on the lesser included offense of involuntary manslaughter.

In *Almanza v. State* we stated the rule that "[i]f the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of the defendant,' which means no more than that there must be *some* harm to the accused from the error." 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). In the instant case appellant was harmed because the jury was not instructed upon and not allowed to consider the lesser offense of involuntary manslaughter.

We therefore set aside the trial court's judgment of conviction and sentence of death, and remand the cause to the trial court for proceedings not inconsistent with this opinion.

WHITE, J., concurs in the result.

McCORMICK, P.J., dissents.

CAMPBELL, J., dissents for reasons stated in the dissenting opinion in *Saunders v. State,* 840 S.W.2d 390 (Tex.Crim.App.1992)

---

2. The author of this opinion continues to believe, for the reasons expressed in the dissenting opinion of Judge White, that *Saunders* was wrongly decided. However, the rule announced in that case is now clearly the law of this State, and it is the author's belief that, except under special circumstances, it is his duty to implement that law fairly and conscientiously in all subsequent cases to which it applies. *See Vargas v. State,* 838 S.W.2d 552 (Tex.Crim.App.1992) (Benavides, J., concurring).

(rehearing denied Nov. 4, 1992) (White, J., dissenting).

## OPINION ON STATE'S MOTIONS FOR REHEARING

WHITE, Judge.

Appellant was convicted on August 24, 1983, of capital murder for intentionally killing Ronald Ted Martin while in the course of committing a robbery. *See* Tex.Penal Code Ann. § 19.03(a)(2). Appellant was sentenced to death.

In point of error number three in our opinion on original submission, *Ross v. State*, No. 69,206 (Tex.Cr.App. December 9, 1992), we held the trial court erred in failing to charge the jury on the lesser included offense of involuntary manslaughter, concluding that the evidence presented entitled appellant to a jury charge on involuntary manslaughter. After finding appellant suffered some harm, we reversed and remanded the instant cause. In point of error number one we found the evidence adduced at trial was sufficient to find appellant intentionally caused the death of the victim. In point of error number four, we held that the evidence from trial was sufficient for a jury to find that the murder was "deliberate."[1] *Ross*, at 875.

■ In the State's Motions for Rehearing, they argue that the only lesser included offense raised by the evidence was felony-murder, and that this Court erred when it concluded that the jury should have been given an instruction on the lesser included offense of involuntary manslaughter. We agree with this contention. We will reconsider Part III of our opinion on original submission concerning point of error number three.

The State contends that no evidence was presented to show that, if guilty, appellant was guilty only of involuntary manslaughter. Admittedly, there was conflicting evidence as to whether appellant intentionally or reck-

lessly killed the victim. Appellant claimed that during the commission of the robbery he shoved the victim forward and "the gun went off and struck the man in the head."[2] This Court concluded that such evidence was sufficient to raise the issue of involuntary manslaughter as a lesser included offense of capital murder, and that the trial court erred in disallowing appellant's request for such an instruction. *Ross*, at 875.

No conflict existed in the evidence as to whether appellant perpetrated a robbery. By his own confession, appellant stated that he held a gun near the victim's head while a co-defendant went through the victim's pockets. Testimony at trial raised the possibility that during the commission of the robbery, the appellant did not intentionally and knowingly cause the death of the victim. *See* Tex.Penal Code Ann. § 19.02(a)(1). If the manner in which the weapon was used amounted to an act clearly dangerous to human life, the resulting homicide constitutes the offense of felony-murder as defined by Tex.Penal Code Ann. § 19.02(a)(3). Only if the homicide had been effected as a result of reckless conduct by the appellant would the appellant be entitled to a jury charge on a lesser included offense of involuntary manslaughter. *See* Tex.Penal Code Ann. §§ 6.03(c), 19.05(a)(1).

■ This Court has enunciated a two-part test to determine whether a charge on a lesser included offense is required. *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Cr.App. 1981). The first prong of the test requires that the offense requested to be charged is a lesser included offense of the offense charged. *Royster*, 622 S.W.2d at 446. The second inquiry is whether there is some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Royster*, *supra*.

It is clear that murder is a lesser included offense of capital murder. *Ex parte McClel-*

---

1. In our opinion on original submission, we only addressed three of appellant's eleven points of error.

2. A complete description of the facts in the instant case is cited in the opinion on original submission, *Ross v. State*, No. 69,206 (Tex.Cr. App. December 9, 1992).

*land,* 588 S.W.2d 957, 959 (Tex.Cr.App.1979). It is also well settled that if facts are elicited during trial that raise an issue of a lesser included offense and a charge is properly requested, then a charge on the issue must be given. *Jackson v. State,* 548 S.W.2d 685, 695 (Tex.Cr.App.1977).

Appellant admits committing a robbery, during which he held a gun to the victim. In the course of this robbery, the gun was fired by the appellant, killing the victim. Trial testimony raised the possibility that the appellant may not have intentionally and knowingly caused the victim's death. Therefore, it is possible the appellant's actions constitute and act clearly dangerous to human life, which resulted in the victim's death, indicating appellant may have only been guilty of felony-murder, as distinguished from involuntary manslaughter. *See* Tex.Penal Code Ann. §§ 19.02(a)(3), 19.05(a)(1).

■ On original submission we found the evidence at trial raised the issue of recklessness, and we reversed the conviction based on the appellant's third point of error. *Ross,* at 875. We believe that was incorrect.

We are in agreement with appellant's brief on original submission that the evidence clearly raises the issue that the appellant may be guilty only of the lesser offense of murder by committing an act clearly dangerous to human life and causing the death of the deceased. In the Motions for Rehearing, the State and the State Prosecuting Attorney concur with appellant.[3] They concede that there was some evidence presented that, if guilty, appellant was guilty only of the offense of felony-murder. We now find that the trial court erred in failing to charge the jury on the lesser offense of murder *over the request and objection of appellant.* However-

er, there was not sufficient evidence to raise the issue of involuntary manslaughter.

■ In *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Cr.App.1984), we stated the rule that "[i]f the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of the defendant,' which means no more than that there must be *some* harm to the accused from the error; in other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless." In the instant case because the evidence clearly raised the issue, appellant was harmed because the jury was not instructed upon and not allowed to consider the lesser offense of felony-murder.

Based on the aforementioned reasons, the appellant was entitled to receive a jury charge on the lesser included offense of murder, or felony-murder, but not involuntary manslaughter. *Jackson; Royster,* supra.

We reverse the conviction based on point of error number two of appellant's brief on original submission asserting appellant's right to a jury charge on the lesser offense of murder,[4] and remand the cause to the trial court.

CLINTON, J., believing that we correctly decided point of error three, joins only the judgment of the Court.

---

**3.** On original submission, the State, in its reply brief, did not address appellant's second point of error contending the trial court erred in not allowing a charge on murder. The State first addressed this issue in its Motion for Rehearing, at which time they conceded the fact that appellant was entitled to such a charge.

**4.** Both the Harris County District Attorney and the State Prosecuting Attorney readily admit that there was some evidence presented at trial that, if guilty, the appellant was guilty only of the offense of felony murder.