NUMBER 13-08-00283-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CARLOS ANTONIO GONZALES, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 105th District Court 

of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza 


Memorandum Opinion by Justice Rodriguez



 Appellant Carlos Antonio Gonzales complains of the jury's verdict convicting him of
capital murder and sentencing him to life in prison. (1) See Tex. Penal Code Ann. §§
12.31(a), 19.03(a)(2) (Vernon Supp. 2009). By eight issues, Gonzales argues that: (1) his
right under the Confrontation Clause was violated when the State cross-examined him
using the statement of his co-defendant, see U.S. Const. amend VI; (2) his right under the
Confrontation Clause was violated during the testimony of the police detective who
investigated the case, see id.; (3) the trial court abused its discretion by failing to charge
the jury on the lesser-included offense of felony murder; (4) the trial court abused its
discretion by failing to grant Gonzales's motion for juror information after good cause was
shown; (5) his constitutional right to an impartial jury was violated when two jurors withheld
certain information during voir dire, see id.; (6) the trial court abused its discretion by
denying Gonzales's motion for new trial on the basis that two jurors failed to disclose
material information; (7) the trial court abused its discretion by admitting multiple
photographs of the scene of the murder and the autopsy; and (8) the cumulative harm from
the multiple constitutional, procedural, and evidentiary errors deprived Gonzales of a fair
trial. We reverse and remand for a new trial.

I. Background

 On February 22, 2007, Victor Morales was found dead in his home by his wife,
Tracy Romero, when she returned home from work in the early evening. Romero found
Morales lying on the floor by the front door of the house in a pool of his own blood; it
appeared that Morales had sustained severe head injuries. There was property missing
from the house, including some jewelry and a five-gallon jug of loose change. Gonzales
and his co-defendant Pablo Padilla became suspects in the case when it was discovered
that they had pawned the jewelry missing from Morales's house. (2) However, the nature of
Morales's death and events surrounding it remained a matter of great dispute.

 On May 17, 2007, Gonzales was indicted for capital murder and theft. (3) Gonzales
pleaded not guilty, and the case proceeded to trial on February 12, 2008. At the three-day
trial, the jury heard the following testimony and evidence:

David Curtiss

 Curtiss, a crime scene investigator for the Corpus Christi Police Department
(CCPD), generally described the crime scene. He noted that there were blood spatters
throughout the house and that the furniture in the living room was out of place, which could
indicate that there had been a fight. Curtiss further testified that the drawers in the
bedrooms had been opened and that it appeared to him as if the place had been
ransacked. Curtiss noted that the following were found at the scene: two handguns, one
under the mattress and one in the nightstand drawer; and remnants of marihuana
cigarettes and a hundred-dollar bill, both found in the trash can.

Tracy Romero

 Romero testified that Morales had a pit bull that was very protective of the family;
she stated that Morales would chain the pit bull outside if someone came to the house
whom the dog did not know. Romero testified that, when she returned home on February
22, 2007, the pit bull was chained up in the backyard. Romero also discussed Morales's
history of drug dealing. She testified that Gonzales had been to her home before and she
was once with Morales at the Sonic near their house when Gonzales met up there with
Morales. Romero stated that, at some point in 2006, she separated from Morales because
of his drug business. She stated that she returned to Morales because she believed he
had stopped dealing drugs, but the night before Morales's death, she and Morales had an
argument because she believed he might be dealing drugs again. Romero testified that
Morales smoked marihuana on a near-daily basis; she admitted that she threw Morales's
marihuana "roaches" in the trash before the police arrived.

R.G. Hernandez

 Hernandez, Morales's brother-in-law, testified that Morales told him that he had
$20,000 in cash at the house. Hernandez stated that Morales often bragged to him and
others about such things.

Richard L. Garcia

 Garcia, the lead CCPD detective on the case, testified that he arrived on the scene
shortly after Romero called 911 to report the killing. Garcia noted the blood spatter and
displaced furniture at the scene and, like Curtiss, stated that it was possible that there had
been a struggle or a fight. Also, like Curtiss, Garcia believed that the house had been
ransacked. Garcia testified that the two guns found in the house and the pit bull were
evidence that Morales was a drug dealer. When asked by defense counsel if it was
possible that someone had come to the house to do a deal and the deal had gone badly,
leading to Morales's murder, Garcia stated that this scenario was possible.

 Garcia testified that Gonzales became a suspect in the case when he learned of
rumors floating around Mathis, Texas--a small town outside of Corpus Christi--that
Gonzales and Padilla were involved in the killing and were trying to sell the jewelry they
had taken from the house. Garcia then sent a notice out to pawn shops in the area that
returned information that both Gonzales and Padilla had been pawning several pieces of
jewelry, which were later identified as those taken from Morales's house. (4) Garcia testified
that he arrested Gonzales shortly thereafter, in early March 2007. Garcia testified that, in
the statement Gonzales gave Garcia after his arrest, Gonzales stated that he and Padilla
thought there would be more money at Morales's house and that Gonzales did not go into
the house to hurt Morales.

 Garcia testified that Padilla gave a statement in September 2007 and, after giving
the statement, took Garcia to a caliche pit in Mathis where Padilla stated the murder
weapon had been dumped. In the caliche pit, Garcia found a heavy tire checker tool and
a pair of gloves, which Padilla identified as the weapon used to kill Morales and the gloves
used in the incident. (5)

Ray Fernandez

 Fernandez, the Nueces County medical examiner who performed the autopsy on
Morales's body, testified that Morales had suffered severe head injuries and that the cause
of death was blunt force trauma to the head. He noted that the back of Morales's skull was
depressed, which could have been caused by a tire checker tool of the type found by
Garcia at the caliche pit, and that he had injuries to the front and side of his head
consistent with being kicked in the face. When questioned by defense counsel, Fernandez
stated that the injuries could also be consistent with a fist fight. However, Fernandez also
noted that Morales had no markings on his fists or broken fingernails that would indicate
he had been fighting with his fists.

Guadalupe Rodriguez

 Rodriguez, another CCPD detective investigating the case, testified that her
investigation revealed that there had been considerable drug traffic in and out of Morales's
house. She also confirmed Curtiss's findings, noting that twenty-one marihuana "roaches"
were found in the house. Rodriguez discussed the results of the police's pawn shop
investigation but specifically noted, without objection, that the fact the jewelry was pawned
did not necessarily mean Gonzales and Padilla intended to murder Morales.

Alvaro Andrade

 Andrade, Gonzales's brother, testified that Morales was a drug dealer. He stated
that he had been to Morales's house with Gonzales and Padilla several times so that
Gonzales could buy drugs from Morales. He testified that he had been in the house only
once and that, typically, Morales would come out to their car to transact with Gonzales. 
Andrade testified that when he went into the house, Morales chained up his pit bull in the
backyard.

Carlos Gonzales

 Gonzales himself testified at trial. He admitted that he was a cocaine dealer. He
testified that he bought large volumes of cocaine from Morales on a regular basis. 
Gonzales stated that he owed Morales $1,000 at the time of Morales's death.

 In his testimony at trial, Gonzales blamed Padilla for the murder. He testified that,
on the day in question, Padilla asked Gonzales to drive him to Morales's house so he could
buy some drugs. Gonzales stated that he pulled up to the house, Padilla exited the car,
knocked on Morales's door, and Morales let Padilla in the house. Gonzales testified that
around five minutes later, Padilla opened the front door of the house and waved to
Gonzales to come in. Gonzales stated that he walked up to the house and, when he got
to the front door, he saw Morales laying on the floor with blood all around his head. 
Gonzales testified that Padilla told him to start taking property from the house, but
Gonzales refused and went back to the car. Gonzales further testified that when Padilla
returned to the car, he was carrying a tire checker tool that he placed in a box in the
backseat of the car. Gonzales stated that he did not learn until later in the evening that
Morales was dead.

 The State then attempted to impeach Gonzales with Padilla's statement to the
police. In the statement, Padilla stated that Gonzales had been the one to commit all the
acts previously described by Gonzales while Padilla waited in the car. (6)

 At trial, the jury also watched the video recording of the statement Gonzales gave
to the police after his arrest. (7) During the statement, Gonzalez gave somewhat conflicting
versions of the events. At first, Gonzales denied any knowledge. As the interview
progressed, however, Gonzales began to be more forthcoming. Referring to Morales's
killing, Gonzales stated that he "didn't know that was going to happen." Gonzales told the
police detective that he and Padilla went to Morales's house to rob him and that things got
out of hand and Padilla hit Morales in the head with a black tool. Gonzales stated that "it
wasn't supposed to be like that." Throughout the statement, Gonzales maintained that he
never hit Morales.

 At the close of the evidence, the trial court heard argument from the State and
defense counsel about various issues with respect to the court's charge to the jury. 
Specifically, counsel for Gonzales requested that the charge include the lesser-included
offense of felony murder because there was evidence at trial that the killing of Morales was
not intentional. The trial court denied the request. The jury returned a guilty verdict,
convicting Gonzales of capital murder and sentencing him to life imprisonment in the
Institutional Division of the Texas Department of Criminal Justice. This appeal ensued.

II. Lesser Included Offense

 By his third issue, Gonzales argues that the trial court abused its discretion in failing
to charge the jury on the lesser-included offense of felony murder. See Tex. Penal Code
Ann. § 19.02(b)(3) (Vernon 2003). We agree.

A. Standard of Review and Applicable Law

 Texas courts employ a two-prong test to determine whether a jury charge on a
lesser-included offense must be given. Threadgill v. State, 146 S.W.3d 654, 665 (Tex.
Crim. App. 2004) (en banc); see also Bargas v. State, No. 13-06-00372-CR, 2007 WL
2459194, at *6 (Tex. App.-Corpus Christi Aug. 31, 2007, no pet.) (mem. op., not
designated for publication). First, we determine whether the lesser offense is a lesser-included offense of the charged offense. Threadgill, 146 S.W.3d at 665. In other words,
the elements of the lesser offense must be included within the proof necessary to establish
the charged offense. See Tex. Code Crim. Proc. Ann. art. 37.09(a) (Vernon 2006);
Schweinle v. State, 915 S.W.2d 17, 18 (Tex. Crim. App. 1996) (per curiam). 

 Second, we determine whether there is some evidence that would permit a rational
jury to find that, if guilty, the defendant is guilty only of the lesser offense. Threadgill, 146
S.W.3d at 665; see Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992) (per
curiam). In other words, "[t]he evidence must establish the lesser-included offense as a
valid rational alternative to the charged offense." Threadgill, 146 S.W.3d at 665. We
consider all of the evidence introduced at trial, whether produced by the State or by the
defendant. Enriquez v. State, 21 S.W.3d 277, 278 (Tex. Crim. App. 2000). In considering
the evidence for purposes of the second prong, we do not judge the credibility of the
evidence or whether it conflicts with other evidence. Saunders, 840 S.W.2d at 391. Thus,
because we are not to weigh the strength or weakness of the evidence, an instruction on
the lesser-included offense is warranted if we find "[a]nything more than a scintilla of
evidence from any source" from which a rational jury could acquit the defendant of the
greater offense while convicting him of the lesser. Schweinle, 915 S.W.2d at 18; see
Saunders, 840 S.W.2d at 391; see also Bargas, 2007 WL 2459194, at *6.

 The evidence can indicate a defendant is guilty of only the lesser offense in one of
two ways. See Saunders, 840 S.W.2d at 391. First, if the evidence either "affirmatively
refutes or negates an element establishing the greater offense," the lesser-included
offense is raised. Schweinle, 915 S.W.2d at 19. Second, "a defendant may be shown
guilty only of the lesser offense if the evidence presented is subject to two interpretations." 
Saunders, 840 S.W.2d at 392; see Ross v. State, 861 S.W.2d 870, 875 (Tex. Crim. App.
1992) ("Where the evidence given at trial is subject to two reasonable inferences, the jury
should be instructed on both inferences."). 

 If we find error in the charge submitted to the jury, we must still determine whether
sufficient harm resulted from the error to require reversal. See Ross, 861 S.W.2d at 875. 
A properly preserved error in the jury charge requires reversal if the error was "calculated
to injure the rights of defendant." Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1986) (op. on reh'g); see Saunders v. State, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995)
(en banc) (applying the Almanza standard in a case where the objected-to error was failure
to include an instruction on a lesser-included offense). A showing of injury requires nothing
more than there be "some harm" to the defendant because of the error. Almanza, 686
S.W.2d at 171. "[T]he presence of any harm, regardless of degree, is sufficient to require
a reversal of the conviction." Dickey v. State, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999)
(en banc). 

B. Analysis

 It is well-established that felony murder is a lesser-included offense of capital
murder, so the first prong of the test is met. See Threadgill, 146 S.W.3d at 665; see also
Bargas, 2007 WL 2459194, at *6 (citing Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim.
App. 2005)). The crucial question on appeal, then, is whether there was more than a
scintilla of evidence that if Gonzales committed an offense, he committed only the offense
of felony murder. See Threadgill, 146 S.W.3d at 665. 

 "The element distinguishing capital murder from felony murder is the intent to kill." 
Id. Felony murder is an unintentional killing committed in the course of committing a
felony; capital murder is an intentional killing committed in the course of committing, among
other offenses, robbery. See Tex. Penal Code Ann. §§ 19.02(b)(3), 19.03(a)(2). Thus, in
the context of felony murder based on robbery, to be entitled to the instruction on the
lesser-included offense, "there must be some evidence that would permit a jury rationally
to find the defendant had the intent to commit robbery but not to cause the death of the
victim." Threadgill, 146 S.W.3d at 665.

 Here, there was ample evidence at trial that Morales was a serious drug dealer and
that he may have had large amounts of cash and drugs in his house, all circumstantial
evidence of a possible motive for the robbery. Curtiss and Garcia both testified that the
physical evidence from the scene--in particular, the blood spatters and displaced
furniture--could be consistent with a struggle or fight in the house. Fernandez stated that
Morales's injuries could be indicative of a fist fight. Rodriguez testified that Gonzales and
Padilla's pawning of the jewelry did not necessarily prove that they intended to kill Morales. 
In the statement he gave police, Gonzales admitted that he and Padilla went to the house
to rob Morales but that he did not intend for things to turn out the way they did. He stated
that the situation got out of hand and that Padilla hit Morales on the head. Because the
evidence is subject to multiple interpretations, see Saunders, 840 S.W.2d at 392; Ross,
861 S.W.2d at 875, we believe an instruction on the lesser-included offense of felony
murder was warranted. See Saunders, 840 S.W.2d at 391 (holding that the reviewing
court is not to weigh the strength or weakness of the evidence). In other words, there was
more than a scintilla of evidence at trial that, although Gonzales and Padilla intended to
rob Morales, they did not intend to kill him. See Threadgill, 146 S.W.3d at 665; Schweinle,
915 S.W.2d at 18. 

 The State argues that Gonzales was not entitled to a lesser-included instruction on
felony murder because there was no evidence that the murder of Morales was anything but
intentional. See Gonzalez v. State, 296 S.W.3d 620, 626-27 (Tex. App.-El Paso 2009,
pet. filed); Flores v. State, 215 S.W.3d 520, 530 (Tex. App.-Beaumont 2007), aff'd on
other grounds, 245 S.W.3d 432 (Tex. Crim. App. 2008); Mohammed v. State, 127 S.W.3d
163, 167-68 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd). The State asserts that an
instruction on the lesser-included offense of felony murder is not proper unless there is
some evidence at trial that the defendant committed a felony and, "in the course of and in
furtherance" of the crime, "commit[ted] an act clearly dangerous to human life that cause[d]
the death of an individual." See Tex. Penal Code Ann. § 19.02(b)(3); Mohammed, 127
S.W.3d at 167. Our review of the evidence presented at trial has revealed evidence
relevant to this issue. There was evidence at trial that the murder weapon was a tire
checker tool and that this tool was used to hit Morales in the head. As previously
discussed, the testimony at trial also indicated that there may have been a struggle or fight
before Morales's death. This evidence is subject to more than one interpretation. It could
be interpreted as proof that whoever hit Morales intended to kill him. Or--especially in
combination with the evidence that there might have been a fight and Gonzales's testimony
that he was unaware that Morales was dead until later in the evening--it could be
interpreted as proof that there was an altercation that escalated beyond the intentions of
Gonzales and Padilla and resulted in Morales's death. If the evidence considered at trial
is subject to two reasonable inferences, the jury should be instructed on both inferences. 
See Saunders, 840 S.W.2d at 392; Ross, 861 S.W.2d at 875. Here, based on the
evidence before it, the trial court erred in refusing to instruct the jury on felony murder
because there was evidence from which a rational jury could have concluded that
Gonzales was guilty only of, in the course of robbing Morales, committing an act clearly
dangerous to human life that led to Morales's death. (8) See Schweinle, 915 S.W.2d at 18;
see also Bargas, 2007 WL 2459194, at *6.

 Having concluded that the trial court erred in failing to instruct the jury on the lesser-included offense of felony murder, we now turn to whether that error sufficiently harmed
Gonzales so as to require reversal of his conviction. See Almanza, 686 S.W.2d at 171. 
The Texas Court of Criminal Appeals has reasoned that "some harm" has befallen a
defendant where "the trial court failed to submit a lesser[-]included offense that was
requested and raised by the evidence" and "where that failure left the jury with the sole
option either to convict the defendant of the greater offense or to acquit him." Saunders,
913 S.W.2d at 571. In such a case, "some" harm occurs because "the jury was not
permitted to fulfill its role as factfinder to resolve the factual dispute whether the defendant
committed the greater or lesser offense." Id. The jurors at Gonzales's trial were faced with
just such a scenario. Moreover, with regard to punishment, the jurors were presented with
only two options: (1) convicting Gonzales and sentencing him to life in prison without
parole; or (2) acquitting Gonzales and setting him free. See Tex. Penal Code Ann. §
12.31(a). By contrast, the punishment range for felony murder is five to ninety-nine years. 
See id. § 12.32(a) (Vernon Supp. 2009). 

 Based on the foregoing facts and analysis, we cannot conclude that there was no
harm in the trial court's error. See Dickey, 22 S.W.2d at 492. Rather, we conclude that,
as previously discussed, where the evidence at trial raised the issue of felony murder,
Gonzales indeed suffered "some harm" because the jury was not instructed on, and thus
not allowed to consider, the lesser offense--and lesser punishment range--of felony
murder. See Almanza, 686 S.W.2d at 571; see also Ross, 861 S.W.2d at 877 (op. on
reh'g). Gonzales's third issue is sustained. 

 Having determined that the trial court erred in failing to instruct the jury on the lesser
included offense of felony murder and that Gonzales was harmed by this error, we need
not reach Gonzales's remaining issues. See Tex. R. App. P. 47.1; Ross, 861 S.W.2d at
877 (remanding case to trial court after finding error and harm resulting from trial court's
denial of instruction on lesser-included offense of felony murder); see also Johnson v.
State, No. A14-92-01036-CR, 1994 WL 668229, at *4 (Tex. App.-Houston [14th Dist.] Dec.
1, 1994, pet. ref'd) (not designated for publication) (same).


III. Conclusion

 Gonzales's judgment of conviction is reversed, and we remand to the trial court for
a new trial. See Ross, 861 S.W.2d at 877; see also Johnson, 1994 WL 668229, at *4.

 

 NELDA V. RODRIGUEZ

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Delivered and filed the 4th

day of February, 2010.

1. The State did not seek the death penalty in Gonzales's case.
2. Pablo Padilla was also convicted for the capital murder of Morales. We affirmed the conviction on
August 20, 2009. See Padilla v. State, No. 13-08-00470-CR, 2009 Tex. App. LEXIS 6552, at *16 (Tex.
App.-Corpus Christi Aug. 20, 2009, pet. filed) (mem. op., not designated for publication).
3. The State declined to pursue the theft charge.
4. Gonzales does not dispute that he pawned some of the jewelry that was taken from Morales's house.
5. Evidence at trial showed that a tire checker is a heavy club used by truckers to test the tires on their
eighteen-wheeler trucks. 
6. Counsel for Gonzales objected to the State's use of Padilla's statement on Confrontation Clause
grounds. See U.S. Const. amend VI. 
7. Gonzales challenged the voluntariness of his statement to police in a motion to suppress, which was
denied after a hearing. Counsel for Gonzales also attacked the voluntariness of the statement at trial. 
Further, the jury charge included an instruction requiring the jury to find that the statement was voluntary
before considering it as evidence. Gonzales does not challenge the voluntariness of his statement on appeal.
8. The State also argues that Gonzales is judicially estopped from complaining of the trial court's failure
to charge the jury on the lesser-included offense because Gonzales relies on the statement he earlier
challenged as involuntary in making his complaint. See Schmidt v. State, 278 S.W.3d 353, 358 (Tex. Crim.
App. 2009) (holding that the equitable rule of judicial estoppel generally prevents a party from prevailing in one
phase of a case on an argument and then relying on a contradictory argument to prevail in another phase). 
However, as previously detailed, Gonzales's statement was not the only evidence supporting the lesser-included offense. There was evidence at trial that Morales was a serious drug dealer who possibly had large
stores of cash and drugs, which is circumstantial evidence of Gonzales and Padilla's motive to rob Morales. 
Moreover, the testimony of Curtiss, Garcia, Fernandez, and Rodriguez all provided circumstantial evidence
that the killing of Morales may not have been intentional. See Enriquez v. State, 21 S.W.3d 277, 278 (Tex.
Crim. App. 2000) (requiring us to consider all evidence presented at trial to determine whether a lesser-included charge is warranted); Schweinle v. State, 915 S.W.2d 17, 18 (Tex. Crim. App. 1996) (per curiam). 
Therefore, we are unpersuaded by the State's estoppel argument.