COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 ARNOLD BARNES III,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-10-00114-CR
  
                          Appeal from
  
 371st District
 Court
  
 of Tarrant County,
 Texas
  
 (TC # 1154502d)
 
 
 
 
  
  
 
 
  
  
 
 
  
  
 
 


                                                                  O
P I N I O N

 

            Arnold Barnes III appeals his
conviction of murder.  Appellant was
indicted for the offense of capital murder, but a jury found him guilty of the
lesser-included offense of murder and assessed his punishment at imprisonment
for a term of seventy-five years.  We affirm.

FACTUAL SUMMARY

            On April 11, 2009, Ronnie Roberts
and his family were staying with Brian Keith Roscoe in his apartment.  Roberts and Roscoe left the apartment during
the evening to get take-out dinner.  As
they were walking to Roscoe’s truck in the parking lot, Roberts heard someone
behind him say, “Hey fellows, I need your wallets.”  Roberts turned around and saw a man, later
identified as Appellant, holding a handgun. 
When Roberts was facing him, Appellant pulled back the hammer on the
gun.  Roberts could not see Appellant’s
face because he was wearing a gray hoody that concealed his head and face.  Frightened that Appellant would kill him,
Roberts gave the man all of the money he had. 
Roscoe, who was six feet seven inches tall and weighed approximately 492
pounds, turned and said, “Are you f-----g kidding me?”  Appellant replied, “No, times are hard.”  Roscoe threw his wallet at Appellant and
charged him in an effort to grab the gun. 
Appellant began shooting and Roscoe fell to the ground.  Roberts ran back to the apartment and yelled
for someone to call 911.  Roberts went
back to assist Roscoe and found him lying on his stomach and holding one hand
to his neck in an effort to staunch the flow of blood.  Appellant had fled the scene.  Roberts and other onlookers attempted to
assist Roscoe, but he was not breathing and did not have a pulse when the paramedics
arrived.  Roscoe was pronounced dead
shortly after arriving at the hospital.  

Dr. Lloyd White, a forensic pathologist employed as a deputy medical
examiner, performed the autopsy.  He
determined that Roscoe had been shot five times.  Three bullets struck him in the thigh and one
bullet grazed his abdomen.  The fatal
injury resulted from a gunshot which entered near the chin, traveled under the
skin along the jaw and continued down into the neck and through the trachea
where it caused a massive disruption of the trachea.  The bullet then traveled into the right side
of the chest where it penetrated the root of the lung, causing a disruption of
the bronchial tubes and major blood vessels. 
Upon leaving the root of the lung, the bullet continued through the
diaphragm and into the liver.  Dr. White
retrieved a large caliber slug from the liver and another from the thigh.  

            The police determined that a cell
phone found near Roscoe’s body belonged to Appellant’s girlfriend, Clintressa
Stewart.  Stewart testified that she and
Appellant had driven to the apartment complex in order to buy marihuana from a
man they knew as “Black.”  Stewart waited
in the car while Appellant went to buy the marihuana.  After a while, Stewart heard gunshots and
then saw Appellant running toward the car. 
When he climbed inside, Appellant told her he had just shot somebody and
they had to leave.  They returned home
and later realized that they did not have the cell phone.  They drove back to the apartment complex to
look for it, but soon left because police officers were everywhere.  Appellant threw away the shoes he had been
wearing and went to stay with his brother at Prairie View A & M.  When Stewart learned that the police had been
to her mother’s house looking for her, she decided to talk to the police.  

            Appellant testified in his own
defense.  He explained that he went to
the apartment complex with the intent to rob someone because he needed money,
but he did not intend to shoot anyone. 
He had purchased the handgun from a guy named “Black.”  He had never fired the gun and did not know
whether it had bullets.  He saw Roberts
and Roscoe walking together and approached them with the hood of his sweatshirt
pulled up to conceal his face.  He said,
“I need your wallets” while he held the gun at his hip.  Appellant denied pulling back the gun’s hammer
or pointing it at either man.  After
Roberts gave him some money, he walked toward Roscoe and said, “I need your
wallet.”  Appellant denied any intent to
harm Roscoe.  Roscoe started walking
toward him while Roberts was yelling, “He’s got a gun, he’s got a gun.”  Appellant took a step backwards and Roscoe
said, “Are you f-----g kidding me?” 
Appellant told him that times were hard and Roscoe reached into his pocket
and pulled out his wallet.  When
Appellant reached for it, Roscoe dropped the wallet, grabbed Appellant’s left
hand with one hand, and grabbed the gun with the other.  As they struggled for the gun, Appellant was
bent forward with his head down such that he could only see the pavement.  The gun discharged next to Appellant’s head
even though he had not pulled back the hammer and his finger was not on the
trigger.  Appellant got scared when the
gun fired by his head, and although he squeezed the trigger several times, he
did not aim the gun at Roscoe.  He quit
firing when Roscoe let go of him and fell, and Appellant immediately ran back
to the car.  He took off the hoody and
threw it down because he thought someone was following him.  Appellant told the jury that although he had
committed an act clearly dangerous to human life, he did not intend to cause
Roscoe’s death.  The jury found Appellant
guilty of the lesser included offense of murder.

IMPROPER IMPEACHMENT

            In two related points of error,
Appellant contends that the trial court erred by denying his motions for
mistrial when the prosecutor improperly impeached him by asking him the details
about a prior conviction.  The State
responds that the trial court’s instructions to disregard were sufficient to
prevent the jury from being unfairly prejudiced against Appellant.

Standard of Review

A mistrial is a device used to halt trial proceedings when error is so
prejudicial that expenditure of further time and expense would be wasteful and
futile.  Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999).  A trial court may properly exercise its
discretion to declare a mistrial if an impartial verdict cannot be reached, or
if a verdict of conviction could be reached but would have to be reversed on
appeal due to an obvious procedural error.  Id.  The asking of an improper question will seldom
call for a mistrial because, in most cases, any harm can be cured by an
instruction to disregard.  Id.  A mistrial is required only when the improper
question is clearly prejudicial to the defendant and is of such character as to
suggest the impossibility of withdrawing the impression produced on the minds
of the jurors.  Id.  We review the trial court’s
denial of a request for mistrial under an abuse of discretion standard.  Id.  To determine whether a trial court abused its
discretion in denying a defendant’s motion for a mistrial, we consider three
factors: (1) the severity of the misconduct; (2) the measures adopted to cure
the misconduct (the efficacy of any cautionary instruction by the trial court);
and (3) the certainty of conviction absent the misconduct (the strength of the
evidence supporting the conviction).  Hawkins v. State, 135 S.W.3d 72, 77
(Tex.Crim.App. 2004).

Question Regarding Revocation

Appellant’s first point of error relates to the following exchange during
the prosecutor’s cross-examination of Appellant:

Q:  Let’s talk about your criminal history,
Arnold.  In case number 0825155, which
was in Criminal District Court Number Two of Tarrant County, you were convicted
of the offense of theft from person; isn’t that correct?

 

A:  Yes, ma’am.

 

Q:  In that offense, on the 1st day of November
2001, you unlawfully appropriated by acquiring or otherwise exercising control
over property, a purse, from the person of the owner, Brenda Furry, with intent
to deprive her of the property; isn’t that correct?

 

A:  Yes, ma’am.

 

Q:  So you stole a woman’s purse in 2004, right?

 

A:  No, I stole a woman’s purse in 2000.

 

Q:  Okay.

 

A:  I was on probation, and I didn’t get the
conviction until I did four years’ probation, and they revoked my probation.

 

Q:  And the reason that your probation was
revoked was because your drug test came back positive, correct?

 

[Defense
counsel]:  Your Honor, I’m going to
object.  That’s not proper
impeachment.  He’s admitted that he’s had
a prior conviction.

 

[The
Court]:  Sustained.

 

[Defense
counsel]:  And I’d ask you to instruct
the jury to disregard that last question.

 

[The
Court]:  The jury will disregard the last
question of prosecutor.

 

[Defense
counsel]:  And I’ll ask for a mistrial.

 

[The
Court]:  Denied.  

 

Appellant asserts that the prosecutor’s question apprised the jury of two
criminal events which were not admissible under Tex.R.Evid. 609: 
Appellant’s illegal use of drugs and his violation of probation.  While the prosecutor’s question was improper,
it does not constitute severe misconduct. 
 The jury had already heard
evidence related to Appellant’s drug use because his girlfriend, Clintressa
Stewart, testified without objection that they went to the apartment complex to
buy a “sack” of marihuana from a man they knew as “Black” and they had
purchased marihuana from him in the past. 
Further, it was Appellant who informed the jury through his
non-responsive answer to the prosecutor’s question that his probation had been
revoked.  The trial court immediately
instructed the jury to disregard the question.  On appeal, we generally presume that the jury
followed the trial court’s instructions.  
Thrift v. State, 176 S.W.3d
221, 224 (Tex.Crim.App. 2005).  The
presumption is rebutable, but the appellant must point to evidence that the
jury failed to follow the trial court’s instructions.  Id.  Given that the jury found Appellant
guilty of the lesser-included offense of murder, it is readily apparent that
the jury found Appellant’s testimony credible. 
We conclude that the prosecutor’s question did not cause him any
prejudice which could not be cured by the court’s prompt instruction to
disregard.  See Ovalle v. State, 13
S.W.3d 774, 783 (Tex.Crim.App. 2000)(“Ordinarily, a prompt instruction to
disregard will cure error associated with an improper question and answer, even
one regarding extraneous offenses.”).  Finally,
there is substantial evidence supporting the murder conviction.  In addition to the physical evidence which
linked Appellant to the crime, Stewart testified that Appellant told her he had
shot someone, Appellant admitted that he pulled the gun’s trigger several times
as he and Roscoe struggled over the gun, and he stopped shooting only when
Roscoe let go of him.   We conclude that
the trial court did not abuse its discretion by denying the motion for
mistrial.  Point of Error One is
overruled. 

Question Regarding Prior Conviction

            In Point of Error Two, Appellant
argues that the court abused its discretion by denying his motion for mistrial
when the prosecutor asked Appellant the following question about his prior
theft conviction:  “And in that case,
that involved you taking something from someone that didn’t belong to you,
correct?”  The trial court sustained
Appellant’s objection that it was improper impeachment, instructed the jury to
disregard the prosecutor’s question, but denied the motion for mistrial.              The
State first responds that there was no prejudicial effect from the question
because the jury had just heard evidence that the prior theft conviction
involved Appellant taking a woman’s purse without her consent.  Even if the question had some prejudicial
effect, we presume that the jury followed the trial court’s instruction to
disregard it.  See Thrift, 176 S.W.3d at 224. 
Again, we observe that the jury’s decision to acquit Appellant of
capital murder and find him guilty of the lesser-included offense of murder
indicates that the jury found Appellant’s testimony credible.  Under these facts, we cannot conclude that
the prosecutor’s question resulted in incurable prejudice.  Point of Error Two is overruled. 

LESSER INCLUDED OFFENSE OF MANSLAUGHTER

            In his final point of error,
Appellant argues that the trial court erred by refusing to submit a jury charge
on the lesser included offense of manslaughter. 
A trial court’s decision to submit or deny an instruction on a
lesser-included offense is reviewed for an abuse of discretion. Threadgill v. State, 146 S.W.3d 654, 666
(Tex.Crim.App. 2004).  The Texas Code of
Criminal Procedure provides that an offense is a lesser-included offense if “it
is established by proof of the same or less than all the facts required to
establish the commission of the offense charged.” Tex.Code Crim.Proc.Ann. art. 37.09(1)(West 2006).  We utilize a two-pronged test to determine
whether a charge on a lesser-included offense should be given:  (1) Is the requested charge for a
lesser-included offense of the charged offense? (2) Is there trial evidence
that supports giving the instruction to the jury?  Rice v.
State, 333 S.W.3d 140, 144 (Tex.Crim.App. 2011);  McKinney
v. State, 207 S.W.3d 366, 370 (Tex.Crim.App. 2006).  

The first step is to determine whether the lesser-included offense is
included within the proof necessary to establish the offense charged.  Rice,
333 S.W.3d at 144; Hall v. State, 225
S.W.3d 524, 531 (Tex.Crim.App. 2007).  This
is a question of law, and it does not depend on the evidence to be produced at
trial. Rice, 333 S.W.2d at 144.  Texas has adopted the cognate pleadings
approach to the first step of the lesser included offense analysis:  “the elements and the facts alleged in the
charging instrument are used to find lesser-included offenses.”  Rice,
333 S.W.3d at 144, quoting Hall, 225
S.W.3d at 535.   The first prong is satisfied if the indictment
for the greater-inclusive offense either: 
(1) alleges all of the elements of the lesser-included offense, or (2)
alleges elements plus facts (including descriptive averments, such as
non-statutory manner and means, that are alleged for purposes of providing
notice) from which all of the elements of the lesser-included offense may be
deduced.  Ex parte Watson, 306 S.W.3d 259, 273 (Tex.Crim.App. 2009).  

The indictment alleged that Appellant, during the course of committing or
attempting to commit a robbery, intentionally caused the death of Brian Keith
Roscoe.  See Tex.Penal Code Ann.
§ 19.03(a)(2)(West Supp.
2011).  A person commits manslaughter if
he recklessly causes the death of an individual.  Tex.Penal
Code Ann. § 19.04
(West 2011).  Manslaughter is a
lesser included offense of capital murder. 
Mathis v. State, 67 S.W.3d
918, 925 (Tex.Crim.App. 2002).  

            The
second step of the lesser-included-offense analysis is to determine if there is
some evidence in the record which would permit a jury to rationally find that,
if the defendant is guilty, he is guilty only of the lesser-included offense.  Rice,
333 S.W.3d at145; Mathis, 67 S.W.3d at
925.  In other words, the evidence must
establish the lesser-included offense as a valid, rational alternative to the
charged offense.  Rice, 333 S.W.3d at 145;  Wesbrook v. State, 29 S.W.3d 103, 113
(Tex.Crim.App. 2000).  If facts are
elicited during trial that raise an issue of the lesser-included offense, and
the charge is properly requested, then a charge must be given.  Ross v.
State, 861 S.W.2d 870, 877 (Tex.Crim.App. 1993)(op. on reh’g.).

To raise the issue of manslaughter, the trial record must contain
evidence of lack of intent to kill and evidence that appellant acted
recklessly.  Mays v. State, 318 S.W.3d 368, 387 (Tex.Crim.App. 2010); Arnold v. State, 234 S.W.3d 664, 673
(Tex.App.--Houston [14th Dist.] 2007, no pet.).  A person acts recklessly when he is aware of
but consciously disregards a substantial and unjustifiable risk that the result
will occur.  Tex.Penal Code Ann. §
6.03(c)(West 2011).  There must be
affirmative evidence in the record that when Appellant pulled the gun’s trigger
four times that (1) he did not intend to cause death or know that death was
reasonably certain to occur; and (2) he consciously disregarded the risk that
he would cause death.  See Mays, 318 S.W.3d at 387.  

In support of his argument that he acted recklessly, Appellant points to
his testimony that he did not aim the gun at Roscoe, he did not pull back the
hammer, he did not have his finger on the trigger when the first shot was
fired, and he did not intend to harm or kill Roscoe.  Appellant admitted squeezing the trigger the
other four times the weapon discharged. 
He specifically testified that he committed an act clearly dangerous to
human life by shooting the gun and he knew when he fired the gun that Roscoe was
right in front of him and would be hit by the gunfire.  He also knew that a single shot could kill a
person.  Appellant testified that he
stopped shooting the gun only when Roscoe let go of him and fell to the
ground.  Appellant’s statements that he
did not aim at Roscoe or intend to harm or kill him are not considered in a
vacuum but must be considered with his testimony that he pulled the trigger four
times knowing that Roscoe would be hit by the gunfire and it takes only one
shot to kill a person.  Appellant’s
testimony certainly raises the lesser included offense of murder under Section
19.02(b)(1)[1] but it does not show that
Appellant acted only recklessly.  See Arnold, 234 S.W.3d at 672-73
(evidence did not warrant instruction on lesser included offense of
manslaughter in murder prosecution; defendant’s isolated statements that he was
not aiming gun at victim and did not intend to kill victim did not constitute
evidence upon which a jury could rationally find that defendant’s actions were
merely reckless where defendant testified that he intentionally fired the
weapon at the victim).  The trial court
did not err by denying the requested instruction.  We overrule Point of Error Two and affirm the
judgment of the trial court.

 

April 4, 2012                                       ________________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)

 











[1]  A person commits murder if he intentionally
or knowingly causes the death of an individual. 
Tex.Penal Code Ann. §
19.02(b)(1)(West 2011).  A person acts
knowingly if he is aware his conduct is reasonably certain to cause the
result.  Tex.Penal Code Ann. § 6.03(b)(West 2011).