**Affirmed and Memorandum Opinion filed July 30, 2013.**



**In The**

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-12-00095-CR

**RAYMOND PRESTON MORENO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1264587**

## M E M O R A N D U M   O P I N I O N

The appellant, Raymond Preston Moreno, was charged with killing the complainant, Favian Ramirez, during a drive-by shooting as the complainant and his companion took cover behind a truck. A jury convicted appellant of murder, *see* Tex. Penal Code Ann. § 19.02 (West 2011), and he appeals, presenting four issues. We affirm.

First, appellant argues that the evidence was insufficient to establish that he intended anything more than to vandalize the truck the complainant hid behind.

Appellant also argues that there was affirmative evidence that he was merely reckless in shooting the truck, which entitled him to a manslaughter instruction. We disagree that the evidence at trial affirmatively demonstrated a lack of intent to kill or seriously injure the men behind the truck or a lack of knowledge that the bullets were reasonably certain to cause death by passing through the truck and striking them.

Appellant also argues that the trial court should have permitted him to introduce evidence that the complainant may have been selling drugs. We hold the trial court did not abuse its discretion, however, by concluding that the prejudicial effect of this evidence substantially outweighed its probative value. *See* Tex. R. Evid. 403. Finally, appellant contends that the prosecutor's failure to turn over evidence of a witness's prior convictions violated his constitutional rights. We conclude that the non-disclosure of this evidence does not "'undermine[ ] confidence in the outcome of the trial'" and therefore does not justify reversal. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *Ex Parte Miles*, 359 S.W.3d 647, 666 (Tex. Crim. App. 2012).

## BACKGROUND

One night, three young men, including appellant and his cousin, visited a residential neighborhood to buy marijuana. The group would not buy marijuana that evening, however. Instead, a fistfight broke out, tensions escalated, shots were fired from a moving car, and someone died.

Appellant and his two companions arrived to meet Genaro Rios, an alleged marijuana dealer, at around midnight. Rios and a group of young men had congregated near Rios's pick-up truck. The complainant was among the men in Rios's group. Rios's truck was parked on the street near the complainant's home.

2

A fight broke out between members of the two groups. Rios's group won the fight, bloodying appellant's cousin. Appellant's group then retreated in their car, but the car soon returned. As the car drove past with appellant in the passenger's seat, Rios stood behind his truck. Appellant threw a glass bottle that hit the truck's windshield. Then the car drove away.

Rios would later testify that, during the next forty-five minutes to an hour, appellant's cousin called, "threatening that they were going to come shoot [Rios], come shoot [Rios's] house. . . . They [were] going to come get [his] family." Appellant may have similarly threatened Rios, but Rios could not distinguish appellant's voice from the cousin's. The third member of appellant's group would testify that both cousins were upset, and that appellant said, "[W]e [are] going to get back at them . . . ." There is no evidence that appellant or his cousin ever expressed a desire to damage Rios's truck further.

Rios was scared. He and the complainant took the truck to retrieve a shotgun and returned to the scene of the fight. Rios again parked his truck on the street near the complainant's house. The complainant was in the passenger's seat, closest to the sidewalk. Another man stood outside the passenger's window, visiting with the complainant and Rios. The three listened to music and joked.

Rios then noticed a police car approaching in his rearview mirror. He and the other two men decided to go into the complainant's house. Rios testified that he and the complainant waited for the police car to pass, then they exited the truck, leaving the shotgun inside. As the officer drove past, he observed two men "outside . . . by a car or truck," "either on the sidewalk or in the front yard area" by the complainant's house. Rios got out of his truck and was "[r]ight in the middle of the street."

Rios turned to see appellant's car headed toward him with the headlights

3

turned off. A witness would later say that appellant's car "couldn't have been 40 yards behind [the police car]." Rios screamed, "That's them" and told the others to "watch it."

Rios testified that someone on the car's passenger side said "Hey, [expletive], what's up?" This passenger had a gun. Rios ran around "the front of [his] truck." He "d[o]ve on the ground on the other side," "tr[ying] to use [the truck] for cover." Rios heard four or five shots. Police would find bullet holes in his truck's windshield, hood, and grill. Rios landed on the ground next to the complainant, who had been shot in the neck and was dying. A coroner would later testify that the bullet's entrance wound was consistent with the bullet having struck the truck before hitting the complainant.

Shortly before the shots, the passing police officer had decided to turn around to visit with the men he had just seen. As the police car turned around—it was "[m]aybe five [or] six" houses away—the officer saw appellant's car and heard multiple shots. Appellant's car then accelerated toward the officer, passing the police car. The officer gave chase, and appellant's car ultimately ran into a utility pole. Appellant then continued to flee on foot until he "jet[ted] across the front of" the officer's car and was run over. Appellant's cousin and the third member of appellant's group were also in the car and were later apprehended.

At trial, neither appellant nor his cousin testified. The third man in their group testified that appellant was the shooter. The jury convicted appellant of murder, and this appeal followed.

## ANALYSIS

Two of appellant's four issues focus upon the evidence of his mental state when he allegedly fired the bullet that killed the complainant. We begin with those

4

two issues. Next, we turn to appellant's argument that the trial court erroneously excluded evidence that the complainant may have been a drug dealer. Finally, we address appellant's arguments that the State's failure to turn over exculpatory evidence requires reversal.

## I. The record contains sufficient evidence of appellant's mental state.

In his first issue, appellant argues that the evidence was insufficient to establish the mental state necessary for murder. We disagree.

When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based upon that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Merritt v. State,* 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses. *Id.* The jury is not permitted to draw conclusions based upon speculation because doing so is not sufficiently based upon facts or evidence to support a finding beyond a reasonable doubt. *Id.* When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination. *Id.* at 525–26.

A culpable mental state is almost always proven through circumstantial evidence. *Mouton v. State*, 923 S.W.2d 219, 223 (Tex. App.—Houston [14th Dist.] 1996, no writ). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). Thus, circumstantial evidence alone can suffice to establish guilt. *Id.* at 15. The jury must review all of the evidence and may reasonably conclude from the circumstantial evidence that the requisite mental state existed. *Mouton v. State*, 923 S.W.2d at 223. "[It] may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious

bodily injury could result from the use of the weapon." *Ross v. State*, 861 S.W.2d 870, 873 (Tex. Crim. App. 1992).

To convict appellant of murder, the State had to prove that "the death of an individual" was appellant's "conscious objective," or that appellant was "aware that his conduct [wa]s reasonably certain to cause th[is] result." Tex. Penal Code Ann. §§ 6.03, 19.02(b)(1) (West 2011). That is, the State had to establish that appellant "intentionally or knowingly cause[d] the death of an individual." *See id.* §§ 6.03, 19.02(b)(1). The State also could have sustained its burden by proving that appellant "intend[ed] to cause serious bodily injury and commit[ted] an act clearly dangerous to human life." *Id.* § 19.02(b)(2).[1]

We need not address each culpable mental state because we conclude the State introduced sufficient evidence to establish that appellant intended to cause death. There was evidence that appellant fired at Rios's truck as Rios and the complainant sought cover behind it. Earlier in the evening, appellant's cousin, and possibly appellant himself, had threatened to shoot Rios. A police officer testified that, as he approached a vehicle near the complainant's house, he observed two individuals on the other side of the vehicle. The jury could have inferred that appellant, who began shooting moments after the officer passed, also saw men on the other side of the truck and was aiming at them. Such knowledge would be consistent with Rios's testimony that he ran from appellant's car as it came down the street. Testimony that the shooter said "[h]ey, [expletive], what's up?" before firing further supports a finding that appellant knew people were behind the truck

---

[1] Of course, a conviction for murder under any theory requires that the death of a human being result from the defendant's acts. *See* Tex. Penal Code Ann. § 19.02. Appellant does not argue that the State introduced insufficient evidence to support this element of murder. Moreover, under the doctrine of transferred intent, it was unnecessary for the State to prove that appellant intended to kill the complainant as opposed to Rios, for example, who sought cover next to the complainant. *See id.* § 6.04(b)(2) (West 2011).

and shot at them with the intent to kill. *See Ross*, 861 S.W.2d at 873. Finally the third member of appellant's group testified that appellant fired "into the crowd."[2]

Appellant argues that the State failed to introduce sufficient evidence of his mental state because "[t]here was . . . no mention about getting weapons and using those weapons against anyone." This argument ignores Rios's testimony that either appellant or appellant's cousin threatened to shoot him. Appellant also argues that "there was no testimony that [he] or anyone in the car shouted at any person." This ignores Rios's testimony that the shooter shouted as the car approached. We must review the sufficiency of the evidence in the light most favorable to the jury's verdict; we cannot disregard this evidence. *See Montgomery*, 369 S.W.3d at 192

Appellant also makes much of evidence that some of his bullets hit the truck, including possibly the bullet that killed the complainant. We address this argument more thoroughly in the next section. For purposes of appellant's sufficiency challenge, however, we need only say that shooting at the truck *supports* a finding that appellant intended to kill the people behind the truck; it does not preclude such a finding. *See Ross*, 861 S.W.2d at 873 (use of deadly force can support inference of intent to kill unless inference would be unreasonable). Because the State introduced sufficient evidence of appellant's mental state, we overrule appellant's first issue.

## II. Because the record contains no affirmative evidence that appellant was guilty only of manslaughter, the trial court correctly denied his request to instruct the jury on this theory.

In his second issue, appellant contends that the trial court erred by denying

---

[2] Appellant argues that other aspects of this witness's testimony suggest that the witness could not have seen where appellant was aiming. In reviewing the sufficiency of the evidence, however, we view testimony in the light most favorable to the jury's verdict. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

his request to instruct the jury on the lesser-included offense of manslaughter. The Texas Code of Criminal Procedure provides that, "[i]n a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." Tex. Code Crim. Proc. Ann. art. 37.08 (West 2012). We employ a two-step analysis to determine whether a lesser-included-offense instruction should be given. *Sweed v. State,* 351 S.W.3d 63, 67 (Tex. Crim. App. 2011). In the first step, the inquiry is whether the lesser-included offense is included within the proof necessary to establish the offense charged. *Id.* at 68. Here, all parties correctly agree that manslaughter is a lesser-included offense of murder. *See Girdy v. State*, 213 S.W.3d 315, 318 (Tex. Crim. App. 2006). We therefore proceed to the second step.

In this step, we determine whether there is some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Sweed,* 351 S.W.3d at 68. There must be some evidence in the record "that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." *Hall v. State,* 225 S.W.3d 524, 536 (Tex. Crim. App. 2007) (internal quotation marks omitted). Further, "anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge." *Id.*

"Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012). "[T]he evidence produced must be sufficient to establish the lesser-included offense as a 'valid, rational alternative' to the charged offense." *Id.* Thus, for a manslaughter instruction to be proper here, some evidence would have to demonstrate affirmatively that appellant was merely reckless when he

8

killed the complainant and that he therefore lacked the mental state necessary for murder.

Appellant argues three pieces of evidence establish that he killed the complainant during a reckless attempt to vandalize Rios's truck. First, appellant points to the three bullet holes found in the truck. Next, he relies upon a coroner's testimony that the fatal bullet may have ricocheted off of the truck before striking the complainant. Finally, appellant contends that throwing a bottle at the truck earlier in the evening is some evidence that the truck was his target when he returned to the scene and began shooting. Appellant argues that "[i]nstead of gunfire sprayed into a crowd or towards the complainant's house, all of the evidence indicated that Appellant fired no more than five shots at Rios' truck and *only* Rios' truck."

We disagree with appellant's arguments because Rios was behind the truck when appellant fired these shots. Indeed, according to the undisputed evidence, appellant could not have shot Rios without shooting through the truck. Under these circumstances, shooting the truck does not affirmatively evidence a reckless act of vandalism or a lack of knowledge that the men behind the truck were reasonably certain to be killed.

Several cases support this conclusion, but we find *Robinson v. State*, 945 S.W.2d 336, 338, 342–43 (Tex. App.—Austin 1997, pet. ref'd), particularly persuasive.[3] In that case, a drive-by shooter fired multiple shots at an apartment building, killing an innocent resident. *Id*. at 337–38. There was evidence that the

---

[3] *See also Cavazos v. State*, 382 S.W.3d at 385 (close-range shooter who later claimed he meant no harm not entitled to instruction on manslaughter); *Mays v. State*, 318 S.W.3d 368, 386–87 (Tex. Crim. App. 2010) (evidence that shooter suffered from paranoid delusions did not support inference that killing was merely reckless); *Medina v. State*, 7 S.W.3d 633, 638–39 (Tex. Crim. App. 1999) (drive-by shooter who aimed at crowd not entitled to manslaughter instruction).

shooter's bullets passed through a utility room and that, at the moment he fired, the shooter could not see the person he allegedly intended to shoot. *Id.* at 340. The shooter argued that this evidence entitled him to a manslaughter instruction because it suggested that he shot the utility room to intimidate his intended target, not to injure or kill. *Id.* at 342–43. The trial court declined to give the instruction, and the court of appeals affirmed. *Id.*

In affirming, the court of appeals held that merely hitting the utility room failed to affirmatively show that the shooter was aiming exclusively for it. Given the events prior to the shooting (e.g., earlier gunfire between the shooter and his intended target, the shooter's "haste to procure an automatic rifle," and the "intentional firing") the jury "could not rationally conclude that [the shooter] killed the victim for reasons unrelated to causing serious bodily injury or death to [the intended target]." *Id.* While one could speculate that the shooter sought to intimidate by firing at the utility room, all affirmative evidence pointed to an intent to kill or injure. *See id.*

Similarly here, the only evidence that the appellant was aiming for the truck is the fact that he hit it. Placed in context, this evidence demonstrated an intent to kill—or at least seriously injure—one or more of the people behind the truck. The threats of violence, the presence of the complainant and Rios inside the truck just before the shooting, Rios's testimony that he ran around the front of the truck as the shooter fired, and the three bullet holes in the area of the truck behind which Rios sought cover—all affirmatively show that Rios was the target, not the truck. By contrast, the record contains no affirmative evidence that appellant did not know people were behind the truck or that the truck was his exclusive target.

Moreover, even assuming that appellant only intended to damage the truck when he threw a bottle at it, this evidence does not affirmatively demonstrate that

10

appellant aimed solely for the truck when he began shooting. Bullets, unlike bottles, can pass through obstacles, striking targets on the other side with lethal force. Additionally, neither appellant nor his cousin ever expressed an intent to damage Rios's truck further. To the contrary, Rios testified that the threats were to "shoot [*him*]" and to "come shoot [his] house."

Indeed, to conclude appellant aimed solely for the truck, one would have to focus upon the evidence that appellant hit the truck while disregarding the considerable evidence that appellant was aiming for one or more of the people behind it. Under a lesser-included-offense analysis, evidence "cannot be plucked out of the record and examined in a vacuum." *See Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986). Accordingly, we hold that the trial court did not err in denying appellant's request for a manslaughter instruction, and we overrule appellant's second issue.

## III. The trial court did not abuse its discretion by excluding evidence that the complainant may have been a drug dealer.

In appellant's third issue, he argues that the trial court erroneously excluded evidence that police "located marijuana, clear plastic bags, and a digital scale" near the scene of the shooting and that police found marijuana and $2,435 in cash in the complainant's bedroom. The trial court excluded this evidence, finding that "whatever probative value this evidence would [have] is not much and certainly the danger of confusing the jury and taking up time on a collateral matter outweighs any probative value." We hold the trial court did not abuse its discretion in so finding.

Under Texas Rule of Evidence 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

11

delay." We review a trial court's decision to exclude evidence under Rule 403 for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We affirm if the court's ruling is "within the zone of reasonable disagreement." *Id*.

Appellant argues that the excluded evidence had probative value for two reasons: (1) it rebutted the State's characterization of the complainant as "the one guy in the front yard who had nothing to do with that drug deal," and (2) the evidence would "call[ ] into question" "Rios['s] attempt[ ] to present himself and the complainant in a favorable light" by "expos[ing] that this drug deal was not a 'one-time thing' that only Rios was involved in."

The State argues the evidence was unfairly prejudicial because the jury would assign less value to the complainant's life if it concluded he was a drug dealer.[4] The State also contends that evidence of the complainant's involvement in the drug trade would have resulted in a distracting and time-consuming mini-trial on the irrelevant issue of the complainant's character.

We conclude the trial court did not abuse its discretion by finding that the potential for unfair prejudice substantially outweighed the evidence's probative value. As to probative value, appellant had a two-pronged defense at trial. He contended that his cousin was the shooter, and he argued that the evidence was insufficient to establish appellant's mental state. The complainant's involvement in drug dealing had little relevance to either prong.

As to the first prong, appellant does not argue—and we cannot conceive— any theory under which the complainant's involvement in the drug trade made it more likely appellant's cousin fired the fatal shot. As to the second, to the extent

---

[4] The State does not argue that the evidence was inadmissible character evidence under Texas Rule of Evidence 404.

the excluded evidence was relevant at all, it could actually have hurt appellant's case. If anything, the State's characterization of the complainant as an innocent bystander made it less likely that appellant intended to shoot him. If appellant had presented evidence that the complainant sold drugs, the jury might have concluded (notwithstanding the unrebutted evidence to the contrary) that the complainant participated in the drug deal and fight that led to his killing. This participation would provide a direct motive for appellant to kill the complainant, just as he had a motive to kill Rios. Instead, the State presented no evidence of a motive to kill the complainant. The absence of such evidence supported the appellant's defense that he killed the complainant accidentally.[5]

While the relevance of the excluded evidence was very low, its potential to distract the jury was considerable. Evidence that the complainant sold drugs would have infected the trial with irrelevant innuendo and encouraged the jury to speculate upon the complainant's culpability for his own death. Not only could this speculation unfairly prejudice the State's case, it had the potential to waste time and distract the jury from relevant issues. As a result, we hold that the trial court did not abuse its discretion in excluding the evidence, and we overrule appellant's third issue.

## IV.  Even if the prosecutor failed to disclose favorable evidence to the appellant, that failure does not undermine our confidence in the verdict.

In his fourth issue, appellant argues that the State violated his confrontation rights and his due process rights under *Brady v. Maryland* by failing to disclose

---

[5] Appellant suggests that the evidence may have been relevant to impeach Rios, but he fails to point to any specific statement that the excluded evidence would contradict. Appellant states that the evidence would contradict an impression Rios created that his selling drugs was "'a one-time thing,'" but Rios in fact testified that he already had sold drugs to appellant twice during the week of the shooting. In any event, to the extent this evidence had some tendency to impeach Rios, the trial court did not abuse its discretion by concluding that this relevance was substantially outweighed by the risk of unfair prejudice.

that Rios had a felony retaliation charge pending when he testified.[6] *See* Tex. Penal Code Ann. § 36.06 (West 2011) (making it a felony to, among other things, threaten harm as retaliation against a witness or informant).

On the day of jury selection, the prosecutor saw Rios at the courthouse and told him that he was not scheduled to testify that day. Rios responded that "he was at the courthouse for something else." Moments later, the prosecutor informed appellant's trial counsel that she had seen Rios in the courthouse, but no one ever asked Rios what he was doing there.

After Rios testified, one of appellant's trial counsel discovered Rios's pending retaliation charge.[7] The prosecutor's initial searches failed to retrieve this charge because the charge misspelled Rios's first name as "Ganaro" instead of "Genaro." Appellant moved for a new trial based upon the State's failure to disclose the pending charge, and the trial court denied the motion. Neither party requested findings of fact or conclusions of law, and the trial court made none.

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* We do not substitute our judgment for that of the trial court, but rather we decide whether

---

[6] Rios's criminal history is not in the record. The trial prosecutor's affidavit states that Rios had "a lengthy criminal history of misdemeanor Driving While Intoxicated cases and Misdemeanor drug cases." Appellant does not argue that failure to disclose these convictions violated his due process rights, but focuses exclusively upon Rios's then-pending retaliation charge. We limit our analysis accordingly.

[7] An affidavit submitted by one of appellant's trial counsel states that she learned of the pending charge "[a]fter Mr. Rios' testimony." Her affidavit does not state whether she discovered this information before or after the trial concluded. Appellant's other trial counsel swore that he "never, at any point prior to or during the trial, learned [of the pending charge] from any other source." Given the lack of argument or evidence to the contrary, our analysis assumes that neither of appellant's trial counsel learned of the charge until after the trial.

the trial court's decision was arbitrary or unreasonable. *Id.* Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

On appeal, appellant argues that failure to disclose Rios's pending charge entitles him to a new trial for two reasons: (1) it violated his constitutional confrontation rights, *see* U.S. CONST. amend. VI; Tex Const. art. I § 10; and (2) it violated his constitutional due process rights, *see* U.S. CONST. amend. XIV; Tex Const. art. I § 19. We conclude that appellant is not entitled to a new trial.[8]

First, we reject appellant's argument that the State violated his confrontation rights by failing to disclose Rios's pending charge because confrontation rights do not entitle a defendant to pretrial discovery of impeachment evidence. *See Thomas v. State*, 837 S.W.2d 106, 111 (Tex. Crim. App. 1992). The right to confront witnesses "is basically a *trial* right"; it does not "constitutionally compel[ ] pretrial discovery." *Id.* (adopting the plurality analysis of *Pennsylvania v. Ritchie*, 480 U.S. 39, 52–53 (1987) (plurality opinion)). "[T]he right . . . prevent[s] improper restrictions on the types of questions that defense counsel may ask during cross-examination," but it "does not include the power to require pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Ritchie*, 480 U.S. at 52–53. We therefore conclude that the State's failure to inform appellant of Rios's pending charge did not violate appellant's right to confront and cross-examine the witnesses against him.

Second, appellant argues that the prosecutor's failure to disclose the charge

---

[8] We do not understand appellant to argue that he is entitled to a new trial based upon newly discovered evidence under article 40.001 of the Texas Code of Criminal Procedure. Appellant has never cited that provision, and his arguments and authorities rely exclusively upon the constitutional rights discussed above.

violated appellant's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963). To establish a *Brady* violation, appellant must show that the prosecutor (1) failed to disclose evidence (2) favorable to him and (3) that the evidence is material. *Harm v. State,* 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). Even if we assume that appellant showed the first two elements of a *Brady* violation, we conclude that he failed to show the materiality of Rios's pending charge.

In this context, favorable evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different. *Olivarez v. State*, 171 S.W.3d 283, 290 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* The mere possibility that undisclosed evidence may have helped the defense or affected the trial's outcome does not establish "materiality" in the constitutional sense. *Id.* Whether the evidence is material is viewed in the context of the overall strength of the State's case. *Id.*

Appellant contends that the non-disclosure of Rios's pending charge undermines confidence in the verdict because it prevented him from "expos[ing] [Rios's] desire to curry favor with the State" and from otherwise impeaching Rios's credibility. We disagree.

To the extent Rios's pending charge may have provided appellant additional impeachment ammunition, the charge would have merely supplemented an already considerable arsenal.[9] Rios admitted at trial that he sold drugs. He also testified that, when threatened, he retrieved a shotgun and waited in his truck with it until a

_____

[9] The State does not argue that Rios's pending charge would have been inadmissible impeachment evidence, so we assume, without deciding, that the evidence was admissible for that purpose. *Cf. Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993) ("A prosecutor does not have a duty to turn over evidence that would be inadmissible at trial.").

passing police car scared him. This evidence suggested that Rios's character was far from impeccable.

In addition, other evidence directly contradicted Rios's testimony on at least two points. For example, Rios testified that he did not get his shotgun until after he was threatened, but the third member of appellant's group testified that a member of Rios's group had a shotgun during the initial fight. Rios also testified that appellant may have threatened him, but a member of Rios's group testified that Rios never mentioned this at the time. Given the evidence of Rios's poor character and the multiple inconsistencies in his testimony, the potential marginal impact of a pending criminal charge does not undermine our confidence in the verdict. *See Saldivar v. State*, 980 S.W.2d 980, 486–87 (Tex. App.—Houston [14th Dist.] 1998, pet ref'd) (where witness was impeached, evidence of unrelated conviction not material). Because, under the circumstances of this case, appellant has failed to demonstrate that evidence of Rios's pending charge was material for purposes of *Brady*, we overrule his final issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.


/s/     J. Brett Busby
        Justice


Panel consists of Justices Frost, Brown, and Busby.

Do Not Publish — Tex. R. App. P. 47.2(b).

17